# EXHIBIT 1

# PLAINTIFF LOKIA HOLDINGS, LLC'S MOTION FOR SUMMARY JUDGMENT ON COUNTS I, II, III AND VI OF THE COMPLAINT [Docket #34]

# EXHIBIT 1

1  Ann Morgan (SBN 933)
   Shannon S. Pierce (SBN 12471)
2  FENNEMORE CRAIG, P.C.
   300 East Second Street - Suite 1510
3  Reno, Nevada 89501
   Telephone: (775) 788-2200
4  Facsimile: (775) 786-1177
   Email: spierce@fclaw.com
5
   SCARINCI & HOLLENBECK, LLC
6  Ronald S. Bienstock (Pro Hac Vice)
   Brent M. Davis (Pro Hac Vice)
7  1100 Valley Brook Ave.
   P.O. Box 790
8  Lyndhurst, NJ 07071
   Telephone: (201) 896-4100
9  Email: Bdavis@musicesq.com

10 Attorneys for Plaintiff
   LOKAI HOLDINGS, LLC

11

12              **UNITED STATES DISTRICT COURT**

13                 **DISTRICT OF NEVADA**

14

15 LOKAI HOLDINGS, LLC, a Delaware          CASE NO: 3:16-CV-00283-RCJ-VPC
   Corporation,
16
                   Plaintiff,              **PLAINTIFF LOKAI HOLDINGS, LLC'S**
17                                         **MOTION FOR SUMMARY**
   vs.                                     **JUDGMENT ON COUNTS I, II, III AND**
18                                         **VI OF THE COMPLAINT**
   ABSOLUTE MARKETING, CRAIG HUEFFNER
19 and DOES 1-10,
                   Defendant.              **ORAL ARGUMENT REQUESTED**
20 _____/

21

22

23

24

25

26

27

28

FENNEMORE CRAIG, P.C.
300 East Second Street - Suite 1510
Reno, Nevada 89501
Tel: (775) 788-2200  Fax: (775) 786-1177

1

**TABLE OF CONTENTS**

2

I.    INTRODUCTORY STATEMENT ........................................................................4

II.   FACTUAL BACKGROUND..............................................................................4

III.  STANDARD OF LAW .......................................................................................7

IV.   ARGUMENT ......................................................................................................8

    A.   There is no genuine dispute of material fact that Defendant's actions constitute trademark counterfeiting as a matter of law.................................................................8

    B.   There is no genuine dispute of material fact that Defendant's actions constitute trademark infringement as a matter of law ...............................................................10

    C.   There is no genuine dispute of material fact that Defendant's actions constitute copyright infringement as a matter of law ...............................................................11

    D.   There is no genuine dispute of material fact that Plaintiff is entitled to statutory damages and any other relief the court deems just as a matter of law ....................13

    E.   There is no genuine dispute of material fact that Plaintiff is entitled to attorney's fees as a matter of law.................................................................................15

V.    CONCLUSION..................................................................................................18

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENNEMORE CRAIG, P.C.
300 East Second Street - Suite 1510
Reno, Nevada 89501
Tel: (775) 788-2200  Fax:  (775) 786-1177

TABLE OF AUTHORITIES

Cases

**Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) ....................................8

Applied Info. Scis. Corp. v. eBay, Inc., 511 F.3d 966, 969 (9th Cir. 2007) ..................10

Avnet, Inc. v. Avana Techs. Inc., 2014 U.S. Dist. LEXIS 177436 *17-18 (D. Nev. 2014) ...........12

Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1056 (9th Cir. 1999).......10

Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001)....................8

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ....................................7,8

Coca-Cola Co. v. Overland, Inc., 692 F.2d 1250 (9th Cir. 1982)....................8,

Cobbler Nev., LLC v. Cerritos, 2016 U.S. Dist. LEXIS 170644, at *12 (D. Or. Dec. 9, 2016)......15

Entertainment Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1217
   (9th Cir. 1997)....................................11

Ferguson v. Nat'l Broadcasting Co., Inc., 584 F.2d 111 (5th Cir. 1978) ..........................12

Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994) ....................................14

Funky Films, Inc. v. Time Warner Entertainment Co., L.P., 462 F.3d 1072, 1076
   (9th. Cir. 2006)....................................11

Gable v. NBC, 727 F. Supp. 2d 815, 823 (C.D. Cal. 2010)....................................12

Gucci Am., Inc. v. Pieta, 2006 U.S. Dist. LEXIS 96701 (C.D. Cal. 2006) ..........................8

Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir. 1984) ..........................13

H-D Michigan v. Bikers Dream, 48 U.S.P.Q. 2d 1108, 1111 (C.D. Cal. 1998)....................8

Jackson v. Axton, 25 F.3d 884, 890 (9th Cir. 1994)....................................15

Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996) ....................................8

Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. 1979, 1983 (2016) ..........................14,16

L.A. News Serv. v. Reuters TV Int'l, Ltd., 149 F.3d 987, 996 (9th Cir. 1998)....................14

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)....................8

Mattel, Inc. v. MGA Entm't, 705 F.3d 1108, 1111 (9th Cir. 2013)....................................15

McCulloch v. Albert E. Price, Inc., 823 F.2d 316, 323 (9th Cir. 1987)....................................15

Meta-Film Assocs., Inc. v. MCA Inc., 586 F. Supp. 1346, 1355 (C.D. Cal. 1984)....................12

Microsoft Corp. v. Evans, 2007 U.S. Dist. LEXIS 77088, at *26 (E.D. Cal. Oct. 16, 2007).........14

Nissan Motor Co. v. Nissan Computer Corp., 378 F.3d 1002, 1019 (9th Cir. 2004)....................11

Oracle United States, Inc. v. Rimini St., 2016 U.S. Dist. LEXIS 128793, at *32-34
   (D. Nev. Sep. 21, 2016)....................................15

Three Boys Music Corp. v. Bolton, 212 F.3d 477, 481 (9th Cir. 2000) ..........................11

Tiffany Design, Inc. v. Reno-Tahoe Specialty, Inc., 55 F. Supp. 2d 1113, 1117
   (D. Nev. 1999)....................................11

Westinghouse Electric Corp. v. General Circuit Breaker & Electric Supply Inc.,
   106 F.3d 894 (9th Cir. 1997) ....................................8

**Statutes**

15 U.S.C. § 1114....................................8

15 U.S.C. § 1117(c)....................................12

15 U.S.C. § 1127....................................9

17 U.S.C. §505....................................14

**Other Authorities**

Complaint....................................4,7

S.Rep. No. 177, 104th Cong. (1995)....................................12

**Rules**

Fed. R. Civ. P. 56(a) ....................................7

**Treatises**

3 Nimmer on Copyright ....................................12

FENNEMORE CRAIG, P.C.
300 East Second Street - Suite 1510
Reno, Nevada 89501
Tel: (775) 788-2200  Fax: (775) 786-1177

FENNEMORE CRAIG, P.C.
300 East Second Street - Suite 1510
Reno, Nevada 89501
Tel: (775) 788-2200  Fax: (775) 786-1177

1    Plaintiff LOKAI HOLDINGS, LLC ("Plaintiff" or "Lokai") moves this Court for an order

2    granting summary judgment in favor of Plaintiff as to the first, second, third, and sixth causes of

3    action contained in Plaintiff's Complaint.  This Motion is made pursuant to Fed. R. Civ. P. 56 and

4    Local Rule 56-1 on the grounds that based on the undisputed material facts, Plaintiff has

5    established its claims as a matter of law.  This Motion is based on the following memorandum, the

6    attached affidavits and exhibits, the pleadings and papers on file herein, any oral argument held on

7    this matter, and any other evidence the Court may wish to consider.

8                              **I.      INTRODUCTORY STATEMENT**

9        Defendant  Craig  Hueffner  ("Defendant")[1]  has  admitted  to  distributing  and/or  selling

10   bracelets which bear, embody or otherwise use trademarked and copyrighted content of Lokai, and

11   further,  using  advertising  material  bearing,  embodying  or  otherwise  using  the  trademarks  in

12   conjunction  with  the  sale  of  such  bracelets,  all  without  permission.    Defendant  has  further

13   admitted to doing so after being contacted by counsel for Lokai.  Defendant's actions forced Lokai

14   to  initiate  this  lawsuit  and  engage  private  investigators  to  obtain  photographic  and  physical

15   evidence  of  his  infringement.    Defendant  then  destroyed  relevant  evidence  after  service  of  the

16   Complaint, and instructed the Court that he is "judgment-proof."  Accordingly, Lokai is entitled to

17   summary judgment on the issues of counterfeiting, trademark infringement, false designation of

18   origin,  false  description  of  fact  and  false  representation  of  fact,  copyright  infringement,  and

19   statutory damages and attorney's fees stemming from the same.  Defendant's actions show a

20   willful disregard for intellectual property rights and laws, and should be treated as such.

21       For  the  reasons  set  forth  fully  below,  Lokai  respectfully  asks  that  this  Court  grant  the

22   Motion in its entirety and enter summary judgment on the issues herein.

23                              **II.     FACTUAL BACKGROUND**

24                 **[CONCISE STATEMENT OF FACTS PURSUANT TO L.R. 56.1]**

25       Lokai is a Delaware corporation with headquarters located in New York City and is

26   engaged  primarily  in  the  manufacture  and  sale  of  inspirational  beaded  bracelets  ("Lokai

27

28   _____

[1]  Defendant  Hueffner  has  represented  to  this  Court  that  Defendant  Absolute  Marketing  is
Defendant's Hueffner's "dba."  As such, Hueffner's admissions apply equally to Defendant
Absolute Marketing.

FENNEMORE CRAIG, P.C.
300 East Second Street · Suite 1510
Reno, Nevada 89501
Tel: (775) 788-2200  Fax: (775) 786-1177

1    Bracelets").   See Declaration of Camilo Lopez ("Lopez Decl.") at ¶ 3.   Lokai Bracelets are

2    available, or have been available, in various colors and bear, embody or otherwise use, on the

3    bracelet and/or attached tag, and in connected promotional and advertising material, the following

4    federally registered trademarks: (1) the standard character "lokai" trademark (Reg. Nos. 4,429,129

5    and 4,637,357), (2) the stylized "lokai" trademark (Reg. Nos. 4,640,686 and 4,742,254), (3) the

6    stylized water droplet logo (Reg. Nos. 4,636,915 and 4,698,780) and (4) the standard character

7    "find your balance" trademark (Reg. No. 4,870,494) (individually and collectively the

8    "Trademark(s)").   Lopez Decl. at ¶ 4; See also Exhibit A attached to the Affidavit of Brent M.

9    Davis ("Davis Aff.") as at 1-7.   The tag attached to the clear-colored Lokai Bracelet (the "Lokai

10   Bracelet Hangtag") is registered with the US Copyright Office under VA 1-968-047, with an

11   effective date of registration of November 03, 2014 (the "Copyright").  See Exhibit B attached to

12   the Davis Aff. as at 1-3.   In addition, images of authentic clear-colored and purple-colored Lokai

13   Bracelets with attached Lokai Bracelet Hangtags are attached to the Lopez Decl. as Exhibit C at

14   pgs. 1-8.

15          Defendant Craig Hueffner ("Defendant" or "Hueffner") sells various products at trade

16   shows throughout the United States over the last twenty-five (25) years.   Deposition of Hueffner

17   ("Hueffner Dep."), a copy of which relevant portions are attached to the Davis Aff. as Exhibit D at

18   43:16-22; 95:22-24; 99:7.   Defendant typically exhibits at such trade shows under the name

19   Absolute Marketing, a fictitious entity registered with the State of Florida in 2014.  Hueffner Dep.

20   at 12:18-13:1; See also Exhibit E attached to the Davis Aff. at pgs. 1-2; See also Exhibit F

21   attached to the Davis Aff. at pgs. 1-9.   Defendant uses, and has been using, the email address

22   "craig_hueffner@msn.com" ("Defendant's MSN.com Email Address").   Hueffner Dep. at 15:11-

23   17.   Defendant has admitted to (1) distributing and/or selling bracelets which bear, embody or

24   otherwise use the Trademarks and Copyright (the "Counterfeit Bracelets") (Hueffner Dep. at 8:3-8,

25   25-9:5; 17:1-4; 54:13-16; 61:11-13, 22-62:6; 64:18-20, 23-65:2; 74:22-24; 118:8-9; See also

26   Defendant's discovery responses attached, as they were produced, to the Davis Aff. as Exhibit G at

27   pg. 1), as well as (2) using advertising material bearing, embodying or otherwise using the

28   Trademarks in conjunction with the sale of the Counterfeit Bracelets ("Infringing Advertising

1    Material") (Hueffner Dep. at 12:4-6; 17:21-18:2, 11-16; 56:23-57:1; 61:16-18; 68:14-16; 79:11-

2    19; 80:3-6; 114:20-22), acknowledging that he did not have permission from Lokai to use "Lokai,"

3    "find your balance," the stylized "Lokai" mark, or the stylized water droplet logo (Hueffner Dep.

4    at 60:12-15; 62:12-21).

5         Plaintiffs, and/or their legal representatives, were first notified of Defendant's sale of the

6    Counterfeit Bracelets and use of Infringing Advertising Material on or about August 11, 2015.

7    Affidavit of Shane I. Birnbaum ("Birnbaum Aff.") at ¶ 3.   On or about August 11, 2015,

8    representatives of Plaintiff sent a cease and desist letter via first class mail and email to

9    Defendant's MSN.com Email Address, a copy of which is attached to the Birnbaum Aff. as

10   Exhibit H at pgs. 1-10.   See also Birnbaum Aff. at ¶ 4.   On or about August 18, 2015,

11   representatives of Plaintiff sent another cease and desist letter via first class mail and email to

12   Defendant's MSN.com Email Address and the address for Absolute Marketing as registered with

13   the State of Florida, a copy of which is attached to the Birnbaum Aff. as Exhibit H at pgs. 11-20.

14   See also Birnbaum Aff. at ¶ 5; See also Exhibit E at pgs. 1-2.   Plaintiff or its representatives did

15   not receive a response from Defendant to either cease and desist correspondence.   Birnbaum Aff.

16   at ¶ 6.

17        Plaintiffs, and/or their legal representatives, were again notified of Defendant's sale of the

18   Counterfeit Bracelets and use of Infringing Advertising Material on or about April 4, 2016.

19   Birnbaum Aff. at ¶ 7.   On or about April 4, 2016, Plaintiff's representatives contacted Defendant

20   via telephone and notified Defendant of his infringing activities and prior cease and desist

21   correspondence.   Birnbaum Aff. at ¶ 8.   On or about April 4 and 5 of 2016, representatives of

22   Plaintiff exchanged email correspondence with Defendant in an attempt to resolve the matter,

23   however, Defendant refused to comply with the requests and instructed representatives of Plaintiff

24   to not contact him again.   See Birnbaum Aff. at ¶ 9; See also a copy of the email correspondence

25   attached to the Birnbaum Aff. as Exhibit I at pgs. 1-3.   Defendant continued to sell the Counterfeit

26   Bracelet and use the Infringing Advertising Material after the April 4 and 5, 2016 email exchange.

27   Hueffner Dep. at 54:13-16; 60:6-10.

28        Plaintiffs were once more notified of an individual's sale of the Counterfeit Bracelets and

FENNEMORE CRAIG, P.C.
300 East Second Street • Suite 1510
Reno, Nevada 89501
Tel: (775) 788-2200  Fax: (775) 786-1177

1   use of Infringing Advertising Material at a trade show in Reno, NV on or about May 23, 2016,

2   which through Plaintiff's representative's investigation was later identified as Defendant.   See

3   relevant correspondence attached to the <u>Birnbaum Aff.</u> as <u>Exhibit J</u> at pg. 1; See also <u>Birnbaum

4   Aff.</u> at ¶ 11.   On or about May 26, 2016, understanding further cease and desist attempts would be

5   futile, Plaintiff initiated this lawsuit and engaged Martin-Ross & Associates to serve the summons

6   and Complaint on the Defendant at the trade show and document evidence of his sale of the

7   Counterfeit Bracelets and use of Infringing Advertising Material.   See <u>Complaint</u>; See also <u>ECF

8   No. 10</u>; See also <u>Affidavit of Shannon S. Pierce</u> ("Pierce Aff.") at ¶ 3; See also <u>Declaration of

9   Michael LaFrieda</u> ("LaFrieda Decl.") at ¶ 3.   On or about May 27, 2016, Plaintiff's representatives

10  from Martin-Ross & Associates obtained images of Defendant setting up a booth at the trade show

11  in Reno, NV displaying the Counterfeit Bracelets and Infringing Advertising Material.   See an

12  example of such images, along with transcribed notes relating to the same, attached to the

13  <u>LaFrieda Decl.</u> as <u>Exhibit K</u> at pgs. 1-4; See also <u>Hueffner Dep.</u> at 68:14-21; 73:12-15.   Plaintiff's

14  representatives from Martin-Ross & Associates also obtained two (2) Counterfeit Bracelets from

15  Defendant, one (1) clear-colored and one (1) purple-colored.   See images of such bracelets

16  attached to the <u>Birnbaum Aff.</u> as <u>Exhibit L</u> at pgs. 2-6; See also <u>Exhibit K</u> at pg. 1; See also

17  <u>LaFrieda Decl.</u> at ¶¶ 5-7; See also <u>Pierce Aff.</u> at ¶¶ 4-6.

18       Defendant has been unable to recall or provide evidence of the sale of the Counterfeit

19  Bracelets and use of Infringing Advertising Material, including sales information, because he does

20  not maintain any business records or receipts, and further, destroyed all relevant evidence he had in

21  his possession after service of the Complaint by disposing of it in the garbage, including the

22  Counterfeit Bracelets and Infringing Advertising Material. See <u>Hueffner Dep.</u> at 8:25-9:5, 13-11:1;

23  11:14-16; 12:4-11; 17:21-24; 31:12-33:19; 37:16-22; 65:18-21; 66:2-3; 67:11-14; 99:3-4; 124:19-

24  126:2; See also <u>Exhibit G</u> at pgs. 1-4, 6-8.

25                        **III.       STANDARD OF LAW**

26       Summary judgment is appropriate where the pleadings, depositions, answers to

27  interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no

28  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

FENNEMORE CRAIG, P.C.
300 East Second Street - Suite 1510
Reno, Nevada 89501
Tel: (775) 788-2200   Fax:   (775) 786-1177

**007**

1   Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the initial burden of informing the

2   court of the basis for its motion and of identifying those portions of the pleadings and discovery

3   responses that demonstrate the absence of a genuine issue of material fact.  See Celotex Corp. v.

4   Catrett, 477 U.S. 317, 323 (1986).  Once the moving party meets its burden, the burden shifts to

5   the nonmoving party opposing the motion, who must "set forth specific facts showing that there is

6   a genuine issue for trial."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

7   Summary judgment is warranted if a party "fails to make a showing sufficient to establish the

8   existence of an element essential to that party's case, and on which that party will bear the burden

9   of proof at trial." Celotex, 477 U.S. at 322.  A genuine issue exists if "the evidence is such that a

10  reasonable jury could return a verdict for the nonmoving party," and material facts are those "that

11  might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248.  There

12  is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of

13  fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

14  574, 587 (1986).  It is not the court's task "to scour the record in search of a genuine issue of

15  triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir.1996).  Counsel has an obligation to

16  lay out their support clearly.  Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.

17  2001).  The court "need not examine the entire file for evidence establishing a genuine issue of

18  fact, where the evidence is not set forth in the opposition papers with adequate references so that it

19  could conveniently be found." Id.  "A party moving for summary judgment is entitled to the

20  benefit of any relevant presumptions that support the motion." Coca-Cola Co. v. Overland, Inc.,

21  692 F.2d 1250, 1254 (9th Cir. 1982) (internal citations omitted).

## IV.   ARGUMENT

### A.   There is no genuine dispute of material fact that Defendant's actions constitute trademark counterfeiting as a matter of law

25      "A plaintiff asserting a claim of trademark counterfeiting in violation of 15 U.S.C. § 1114

26  must show (1) ownership of a valid trademark and (2) counterfeiting of that trademark." Gucci

27  Am., Inc. v. Pieta, 2006 U.S. Dist. LEXIS 96701, at *9 (C.D. Cal. 2006) citing H-D Michigan v.

28  Bikers Dream, 48 U.S.P.Q. 2d 1108, 1111 (C.D. Cal. 1998) (citing Westinghouse Electric Corp. v.

FENNEMORE CRAIG, P.C.
300 East Second Street - Suite 1510
Reno, Nevada 89501
Tel: (775) 788-2200   Fax:  (775) 786-1177

1    General Circuit Breaker & Electric Supply Inc., 106 F.3d 894, 899 (9th Cir. 1997)).

2         Lokai bears the burden of demonstrating that there is no genuine issue of material fact

3    regarding its ownership of valid trademarks.  "Federal registration of a trademark endows it with a

4    strong presumption of validity."   Coca-Cola Co., 692 F.2d at 1254 (internal citations omitted).

5    Lokai owns four (4) federal trademark registrations on the Principal Register for the Trademarks.

6    See Exhibit A.  Accordingly, there are no issues of material fact that the Trademarks are valid and

7    owned by Lokai.

8         There are no issues of material fact that Defendant counterfeited the Trademarks.   15

9    U.S.C. § 1127 provides, in part, that, "[a] 'counterfeit' is a spurious mark which is identical with,

10   or substantially indistinguishable from, a registered mark."  Defendant has admitted, under oath,

11   that he sold and/or distributed the Counterfeit Bracelets (Hueffner Dep. at 8:3-8, 25-9:5; 17:1-4;

12   54:13-16;  61:11-13,  22-62:6;  64:18-20,  23-65:2;  74:22-24;  118:8-9;  see also Defendant's

13   discovery responses attached, as they were produced, to the Davis Aff. as Exhibit G at pg. 1).

14   Defendant further admitted, under oath, that he used the Infringing Advertising Material in

15   conjunction with the sale of the Counterfeit Bracelets (Hueffner Dep. at 12:4-6; 17:21-18:2, 11-16;

16   56:23-57:1; 61:16-18; 68:14-16; 79:11-19; 80:3-6; 114:20-22), without permission from Lokai to

17   use  the  Trademarks.    (Hueffner Dep.  at  60:12-15;  62:12-21).    Additionally,  there  is

18   incontrovertible evidence of the counterfeiting: the Counterfeit Bracelets obtained from Defendant

19   (see Exhibit L at pgs. 2-6; see also Exhibit K at pg. 1; see also LaFrieda Decl. at ¶¶ 5-7; see also

20   Pierce Aff. at ¶¶ 4-6), and photograph evidence of Defendant using the Infringing Advertising

21   Material (see Exhibit K at pg. 4; see also Hueffner Dep. at 68:14-21; 73:12-15).

22        Nevertheless, a careful inspection of the Counterfeit Bracelets, and comparison of the same

23   to Lokai Bracelets, unequivocally establishes that Defendant has counterfeited the Trademarks.

24   The Counterfeit Bracelets use marks (see Exhibit L at pgs. 2, 3, 5, 6), on the attached tag and the

25   opposed black and white beads, that are "identical with, or substantially indistinguishable from"

26   the Trademarks (See Exhibit A, pgs. 1, 3, 5, 7).

27        There are no genuine issues of material fact that the Counterfeit Bracelets are not authentic

28   Lokai Bracelets.  See Lopez Decl. at ¶ 6.  Authentic Lokai Bracelet Hangtags, on the front side,

FENNEMORE CRAIG, P.C.
300 East Second Street - Suite 1510
Reno, Nevada 89501
Tel: (775) 788-2200  Fax: (775) 786-1177

use the "®" symbol next to the bottom right of the stylized "lokai" trademark, as well as to the bottom left of the stylized water droplet logo, while the clear-colored Counterfeit Bracelet hangtags do not use the "®" symbol next to the bottom right of the stylized "lokai" trademark or to the bottom left of the stylized water droplet logo.  Lopez Decl. at ¶ 6a.  Authentic purple-colored Lokai Bracelet hangtags, on the back side, use the phrase "Proud supporter of the *A*lzheimer's *A*ssociation®" (emphasis added) with the initial "A" in both "Alzheimer's" and "Association" capitalized, while the initial "a" in both "*a*lzheimer's" and "*a*ssociation" (emphasis added) on the back side of the purple-colored Counterfeit bracelet hangtags are not capitalized.  Lopez Decl. at ¶ 6b.  Authentic Lokai Bracelet Hangtags and authentic purple-colored Lokai Bracelet hangtags, on the front side, use the phrase "find your balance" in bolded text, while this phrase is not bolded on the Counterfeit Bracelet hangtags.  Lopez Decl. at ¶ 6c.  Authentic Lokai Bracelets have a small indented circle on the back side of the diametrically opposed black and white beads; indented circle on the back side of the diametrically opposed black and white beads on the Counterfeit Bracelets is visibly larger in circumference.  Lopez Decl. at ¶ 6d.  Authentic Lokai Bracelets have identifiable separation between the colored beads adjacent to the diametrically opposed black and white beads so that a small section of black or white silicone is visible, while the colored beads adjacent to the diametrically opposed black and white beads on the Counterfeit Bracelet lack such separation.  Lopez Decl. at ¶ 6e.

There are no material issues of fact that Lokai is the owner of valid Trademarks, and Defendant counterfeited such marks.  Accordingly, Lokai is entitled to summary judgment on the issue of counterfeiting as a matter of law.

**B.      There is no genuine dispute of material fact that Defendant's actions constitute trademark infringement as a matter of law**

"To prevail on its trademark infringement claim, [Lokai] must show that: (1) it has a valid, protectable trademark, and (2) that [Defendant]'s use of the mark is likely to cause confusion."  Applied Info. Scis. Corp. v. eBay, Inc., 511 F.3d 966, 969 (9th Cir. 2007) (internal citation omitted).

As explained above in section IV, A of the Motion, Lokai has already demonstrated that

1  there is no genuine issue of material fact regarding the ownership and validity of the Trademarks

2  by producing the Certificates of Registration.

3      There are no genuine issues of material fact that Defendant's use of the mark is likely to

4  cause confusion.  Likelihood of confusion can be presumed where the marks are nearly identical

5  and used on related products and services.  See Brookfield Commc'ns, Inc. v. W. Coast Entm't

6  Corp., 174 F.3d 1036, 1056 (9th Cir. 1999) ("In light of the virtual identity of marks, if they were

7  used with identical products or services likelihood of confusion would follow as a matter of

8  course."); See also Nissan Motor Co. v. Nissan Computer Corp., 378 F.3d 1002, 1019 (9th Cir.

9  2004) (Affirming summary judgment of likely confusion where, inter alia, the marks were "legally

10  identical" and "the goods or services [were] related as to auto-related advertising").

11      As explained above in section IV, A of the Motion, there are no genuine issues of material

12  fact that Defendant used the Trademarks and that the Trademarks and the marks used on the

13  Counterfeit Bracelets and Infringing Advertising Material are virtually and legally identical and

14  used with identical products and/or services.  Accordingly, there are no genuine issues of material

15  fact that there is, as a matter of law, a likelihood of confusion, and Lokai is entitled to summary

16  judgment on the issue of trademark infringement as a matter of law.

17  **C.      There is no genuine dispute of material fact that Defendant's actions constitute**

18  **copyright infringement as a matter of law**

19  "To prevail on a claim of copyright infringement, [Lokai] must demonstrate (1) ownership of a

20  valid copyright and (2) copying of protected elements of the copyrighted work."  Tiffany Design,

21  Inc. v. Reno-Tahoe Specialty, Inc., 55 F. Supp. 2d 1113, 1117 (D. Nev. 1999) citing Entertainment

22  Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1217 (9th Cir. 1997).

23      There are no genuine issues of material fact that Lokai has ownership of a valid copyright.

24  "[A] certificate of registration will raise the presumption of valid copyright ownership."  Tiffany

25  Design, Inc., 55 F. Supp. 2d at 1118 (D. Nev. 1999) (internal citations omitted).

26      Lokai has a Certificate of Registration for the Copyright.  See Exhibit B at pgs. 1-3.

27  Therefore, Lokai has demonstrated that there is no genuine issue of material fact that it owns a

28  valid copyright.

FENNEMORE CRAIG, P.C.
300 East Second Street - Suite 1510
Reno, Nevada 89501
Tel: (775) 788-2200  Fax:  (775) 786-1177

**011**

1    There are no genuine issues of material fact that Defendant copied the protected elements

2    of the Copyright.  This can be achieved either through evidence of direct copying or through a

3    showing that Defendants had "access" to the Copyright and that the two works at issue are

4    "substantially similar."  See Funky Films, Inc. v. Time Warner Entertainment Co., L.P., 462 F.3d

5    1072, 1076 (9th. Cir. 2006); See also Three Boys Music Corp. v. Bolton, 212 F.3d 477, 481 (9th

6    Cir. 2000).

7        In rare cases, a plaintiff can prove copying even without proof of access "if he can show
         that the two works are not only substantially similar, but are so strikingly similar as to
8        preclude the possibility of [**18] independent creation."  Meta-Film Assocs., Inc. v. MCA
         Inc., 586 F. Supp. 1346, 1355 (C.D. Cal. 1984) (citing 3 Nimmer on Copyright § 13.01[B]
9        and Ferguson v. Nat'l Broadcasting Co., Inc., 584 F.2d 111, 113 (5th Cir. 1978)).  In such
         instances, access can be inferred from the "striking" similarities between the works.  Id.
10

11   Gable v. NBC, 727 F. Supp. 2d 815, 823 (C.D. Cal. 2010).

12       This qualifies as one of those rare cases.  As explained herein, the tags attached to the

13   Counterfeit Bracelets are "so strikingly similar" to the Lokai Bracelet Hangtag that they are nearly

14   identical.  See Exhibit B at pgs. 2-3; See also Exhibit L at pgs. 2, 4.  The Counterfeit Bracelet tags

15   copy nearly every element of the Copyright in almost identical manner, orientation and form,

16   "precluding all possibility of independent creation."  As such, access should be inferred from the

17   identicality of the works.

18       There are no genuine issues of material fact that Lokai owns a valid Copyright and that

19   Defendant copied, with the exception of minuscule differences that would not be noticeable except

20   upon intense inspection, the entirety of the copyrighted Lokai Bracelet Hangtag.  Accordingly,

21   Lokai is entitled to summary judgment on the issue of copyright infringement as a matter of law.

22   **D.    There is no genuine dispute of material fact that Plaintiff is entitled to statutory**

23   **damages and any other relief the court deems just as a matter of law**

24   [A] plaintiff may elect to receive an award of statutory damages [between $1,000 and
     $200,000 per counterfeit mark per type of good] in trademark actions involving the use of a
25   counterfeit mark. See 15 U.S.C. § 1117(c).  The purpose of § 1117 is to take the incentive
     out of counterfeiting and strengthen the civil remedies against counterfeiters.  See S.Rep.
26   No. 177, 104th Cong. (1995).  In amending § 1117 to provide for recovery of statutory
     damages, Congress recognized that "a civil litigant may not be able to prove actual
27   damages if a sophisticated, large-scale counterfeiter has hidden or destroyed information
     about his counterfeiting."  Id.  It is often the case that counterfeiters' records are
28

FENNEMORE CRAIG, P.C.
300 East Second Street - Suite 1510
Reno, Nevada 89501
Tel: (775) 788-2200  Fax:  (775) 786-1177

"frequently non-existent, inadequate or deceptively kept in order to willfully deflate the level of counterfeiting activity actually engaged in, making proving actual damages in these cases extremely difficult if not impossible." [*18] Id.

Avnet, Inc. v. Avana Techs. Inc., 2014 U.S. Dist. LEXIS 177436 *17-18 (D. Nev. 2014).

District courts have wide discretion in determining statutory damages, subject only to the statutory minimum and maximum, and the Lanham Act does not provide guidelines to courts for determining an appropriate award.

In fashioning the award of statutory damages, courts in this district have examined a wide range of factors, including the defendant's financial situation, naïveté, failure to resolve the trademark violations through settlement, and the extent of the infringement.

Id. at *20-22 (internal citations omitted).

Lokai hereby elects to receive an award of statutory damages for Defendant's use of the counterfeit mark. Lokai is faced with the exact situation Congress recognized above. Lokai is unable to prove actual damages due to Defendant's inability to recall or provide practically any evidence of the sale of the Counterfeit Bracelets and use of Infringing Advertising Material, beyond a mere guess[2], because Defendant admittedly does not maintain any business records or receipts, and further, *purposefully destroyed all relevant evidence he had in his possession after service of the Complaint by disposing of it in the garbage, including the Counterfeit Bracelets and Infringing Advertising Material*. See Hueffner Dep. at 8:25-9:5, 13-11:1; 11:14-16; 12:4-11; 17:21-24; 31:12-33:19; 37:16-22; 65:18-21; 66:2-3; 67:11-14; 99:3-4; 124:19-126:2;  See also Exhibit G at pgs. 1-4, 6-8. Further, Lokai attempted to contact Defendant multiple times in hopes of reaching a resolution without court intervention, but Defendant refused to comply by either simply not responding or instructing Lokai to not contact him. See Exhibit H at pgs. 1-20; See also Exhibit I at pgs. 1-3. Also, Defendant is experienced as he has been selling products at trade-shows for over two decades. Hueffner Dep. at 43:16-22; 95:22-24; 99:7. The circumstances support an award of statutory damages towards the maximum end of the spectrum.

In addition to statutory damages under the Lanham Act, the Copyright Act provides that:

[t]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable

_____

[2] See Hueffner Dep. At 11:7-16.

Page 13

FENNEMORE CRAIG, P.C.
300 East Second Street · Suite 1510
Reno, Nevada 89501
Tel: (775) 788-2200  Fax:  (775) 786-1177

individually, ... in a sum of not less than $ 750 or more than $ 30,000 as the court considers just.

17 U.S.C. § 504.

"The court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir. 1984) (internal citation omitted). Awards of statutory damages serve both compensatory and punitive purposes. L.A. News Serv. v. Reuters TV Int'l, Ltd., 149 F.3d 987, 996 (9th Cir. 1998) (internal citations omitted).

Lokai hereby elects to recover an award of statutory damages on the copyright claim[3], along with any other relief, in an amount the court deems just. Defendant's actions have made it difficult, if not impossible, for the Court to determine an appropriate amount to serve the compensatory purposes of the statutory damages award because Lokai cannot prove actual damages and profits from infringement of the Copyright due to Defendant's lack of record keeping and purposeful destruction of relevant evidence after service of the Complaint. On the other hand, an award toward the maximum end of the spectrum would serve the punitive purposes of statutory damages as it would punish Defendant's copying in whole cloth of the Copyright and purposeful destruction of evidence after service of the Complaint. As such, an award of statutory damages near $30,000 would effectively serve both the compensatory and punitive purposes of statutory damages.

**E.      There is no genuine dispute of material fact that Plaintiff is entitled to attorney's fees as a matter of law**

"Section 505 of the Copyright Act provides that a district court "may . . . award a reasonable attorney's fee to the prevailing party."" Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. 1979, 1983 (2016) citing to 17 U. S. C. §505. Citing to Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994), the Court in Kirtsaeng stresses the importance of one factor[4] in the determination of

---

[3] "[T]here is no double recovery in awards of statutory damages under both [the Copyright Act and Lanham Act] because distinct injuries to different interests have been suffered by the Plaintiff." Microsoft Corp. v. Evans, 2007 U.S. Dist. LEXIS 77088, at *26 (E.D. Cal. Oct. 16, 2007).

[4] The Court cites to Fogerty acknowledging the "nonexclusive factors" that should be used "to

FENNEMORE CRAIG, P.C.
300 East Second Street - Suite 1510
Reno, Nevada 89501
Tel: (775) 788-2200  Fax: (775) 786-1177

FENNEMORE CRAIG, P.C.
300 East Second Street - Suite 1510
Reno, Nevada 89501
Tel: (775) 788-2200   Fax:  (775) 786-1177

1    awarding attorney's fees – objective reasonableness.  Kirtsaeng at 1986-88.  However, the Court

2    clarifies that "objective reasonableness can be only an important factor in assessing fee

3    applications—not the controlling one[,]" putting forth other examples of considerations which may

4    warrant an award of attorney's fees, such as a party's litigation misconduct or deterrence of

5    repeated instances of infringement.   Id. at 1988-89 (internal citations omitted).   "Although

6    objective reasonableness carries significant weight, courts must view all the circumstances of a

7    case on their own terms, in light of the Copyright Act's essential goals[5]."  Id. at 1989.

8         The Ninth Circuit has typically used a five-factor test, which accounts for the foregoing

9    factors, to determine if attorney's fees are warranted: (1) the degree of success of the prevailing

10   party; (2) the objective reasonableness of the losing party's arguments during litigation; (3) the

11   need to make the prevailing party whole; (4) deterrence; and (5) the purposes of the Copyright Act.

12   See Oracle United States, Inc. v. Rimini St., 2016 U.S. Dist. LEXIS 128793, at *32-34 (D. Nev.

13   Sep. 21, 2016) citing to Kirtsaeng at 1986; McCulloch v. Albert E. Price, Inc., 823 F.2d 316, 323

14   (9th Cir. 1987); Jackson v. Axton, 25 F.3d 884, 890 (9th Cir. 1994).  Further, "[t]he Ninth Circuit

15   has held that "[t]he most important factor in determining whether to award fees under the

16   Copyright Act, is whether an award will further the purposes of the Act.""  Cobbler Nev., LLC v.

17   Cerritos, 2016 U.S. Dist. LEXIS 170644, at *12 (D. Or. Dec. 9, 2016) citing to Mattel, Inc. v.

18   MGA Entm't, 705 F.3d 1108, 1111 (9th Cir. 2013).

19        The first factor, the degree of success of the prevailing party, weighs heavily in favor of

20   Lokai, as Lokai expects summary judgment on all issues it intended to move forward with at trial,

21   one of them being the copyright claim.

22        The second factor, objective reasonableness, also weighs heavily in favor of Lokai, as

23   Defendant has thus far not put forth any defense, affirmative or otherwise, to any of the claims

24   brought by Lokai, including the copyright claim.   In fact, Defendant has taken objectively

25   _____

26   inform a court's fee-shifting decisions: "frivolousness, motivation, objective unreasonableness[,]
     and the need in particular circumstances to advance considerations of compensation and

27   deterrence." Kirtsaeng at 1985 (internal citation omitted).
     [5] The Court states the purpose as "enriching the general public through access to creative works,"

28   with "two subsidiary aims [of] *encouraging and rewarding authors' creations (emphasis added)*
     while also enabling others to build on that work."  Kirtsaeng at 1986 (internal citations omitted).

1  unreasonable steps by continuing to infringement in light of two (2) cease and desist letters and

2  telephonic and electronic correspondence regarding the same, thereby forcing Lokai to bring this

3  litigation and expend significant resources and time, including those of the Court.  See Exhibit H

4  at pgs. 1-20; See also Exhibit I at pgs. 1-3; See also Birnbaum Aff. at ¶ 8-9; See also Hueffner

5  Dep. at 54:13-16; 60:6-10.

6         The foregoing also tilts the third factor, the need to make the prevailing party whole, in

7  Lokai's favor, since Lokai's expenditures related to this litigation would not have been necessary

8  had Defendant complied with either the two (2) cease and desist correspondence or the later

9  telephonic and related electronic discussion.  Further, as stated above, Defendant's purposeful

10  destruction of evidence and non-existent business records makes it impossible for Lokai to

11  determine the extent of damages.  See Hueffner Dep. at 8:25-9:5; 9:13-11:1; 11:14-16; 12:4-11;

12  17:21-24; 31:12-33:19; 37:16-22; 65:18-21; 66:2-3; 67:11-14; 99:3-4; 124:19-126:2.

13         The fourth factor, deterrence, likewise weighs heavily in favor of Lokai, as Defendant (1)

14  has shown he is willing to continue infringement in light of cease and desist demands (see

15  Hueffner Dep. at 54:13-16; 60:6-10), and, (2) believes he is "judgment-proof" (see Exhibit M at

16  13:4).

17         The fifth factor, the purposes of the Copyright Act, also weighs heavily in Lokai's favor.

18  As the Court in Kirtsaeng stressed, the purpose of the Act is to "enrich[] the general public through

19  access to creative works," with "two subsidiary aims [of] *encouraging and rewarding authors'*

20  *creations (emphasis added)* while also enabling others to build on that work."  Kirtsaeng at 1986

21  (internal citations omitted).  Awarding attorney's fees to Lokai furthers those purposes as it

22  rewards the owner of a copyright that was copied in its entirety, without any independent creative

23  additions whatsoever.  See Exhibit B at pgs. 2-3; See also Exhibit L at pgs. 2, 4.

24         As all five factors, including objective reasonableness and promoting the purposes of the

25  Copyright Act, weigh heavily in Lokai's favor, a fee award for Lokai is appropriate in this

26  instance.[6]

27

28  _____
   [6]  Lokai can submit invoices describing the total amount of attorney's fees in a supplemental brief
        upon the Court's request.

FENNEMORE CRAIG, P.C.
300 East Second Street - Suite 1510
Reno, Nevada 89501
Tel: (775) 788-2200  Fax:  (775) 786-1177

016

1

## V.   CONCLUSION

2    For the reasons stated above, there are no genuine issues of material fact as to Defendant's

3 liability for counterfeiting, trademark infringement, false designation of origin, false description of

4 fact and false representation of fact and copyright infringement, as a matter of law.  Therefore, and

5 in light of Defendant's actions showing a willful disregard for intellectual property rights and laws,

6 Lokai respectfully requests that this Court grant the Motion in its entirety, enter summary

7 judgment on the issues herein and award statutory damages and attorney's fees stemming from the

8 same, along with any other relief the Court sees fit.

9 DATED: 1/20/2017                    FENNEMORE CRAIG, P.C.

10
                                     By: /s/ Shannon S. Pierce
11                                   Ann Morgan (SBN 933)
                                     Shannon Pierce (SBN 12471)
12                                   300 East Second Street - Suite 1510
                                     Reno, Nevada 89501
13                                   Tel: (775) 788-2200
                                     Fax: (775) 786-1177
14                                   Email: spierce@fclaw.com

15

16                                   SCARINCI & HOLLENBECK, LLC
17                                   Ronald S. Bienstock (pro hac vice)
                                     Brent M. Davis (pro hac vice)
18                                   1100 Valley Brook Ave.
                                     P.O. Box 790
19                                   Lyndhurst, NJ 07071
                                     Telephone: (201) 896-4100
20                                   Email: Bdavis@musicesq.com

21                                   *Attorneys for Plaintiff Lokai Holdings, LLC*

22

23

24

25

26

27

28

Page 17

1

<b><u>CERTIFICATE OF SERVICE</u></b>

2      I certify that I am an employee of FENNEMORE CRAIG, P.C., and that on this date,

3  pursuant to FRCP 5(b), I am serving a true and correct copy of the attached PLAINTIFF LOKAI

4  HOLDINGS, LLC'S MOTION FOR SUMMARY JUDGMENT ON COUNTS I, II, III AND VI

5  OF THE COMPLAINT – ORAL ARGUMENT REQUESTED on the parties set forth below by:

6      __XX__      Placing an original or true copy thereof in a sealed envelope placed for
7                     collection and mailing in the United States Mail, at Reno, Nevada, postage
                      prepaid, following ordinary business practices

8      _____      Certified Mail, Return Receipt Requested

9      _____      Via Facsimile (Fax)

10

11      _____      Placing an original or true copy thereof in a sealed envelope and causing the
                      same to be personally Hand Delivered

12      _____      Federal Express (or other overnight delivery)

13

14      _____      E-service effected by CM/ECF

15  addressed as follows:

16  Craig Hueffner
    Absolute Marketing

17  725 Sydney Drive
    Racine, WI  53402

18

19

20      DATED this 20th day of January, 2017.

21

                                  /s/  Debbie Sorensen

22                                  An employee of FENNEMORE CRAIG, P.C.

23

24

25

26

27

28

FENNEMORE CRAIG, P.C.
300 East Second Street - Suite 1510
Reno, Nevada 89501
Tel: (775) 788-2200  Fax:  (775) 786-1177

018

1

2

3

### INDEX OF EXHIBITS

**Exhibit No.**                                    **Description**

A        Trademark Certificates of Registration
B        Copyright Certificate of Registration and Images
C        Images of Authentic Lokai Bracelets
D        Deposition of Craig Hueffner
E        Absolute Marketing Documents
F        Exhibitor Information
G        Defendant's Discovery Responses
H        Cease and Desist Correspondence
I        Email Correspondence with Craig Hueffner
J        Notification of Infringement in Reno, NV
K        Images of Defendant Displaying Counterfeit Bracelets and Infringing
         Advertising Material
L        Images of Counterfeit Bracelets Obtained from Defendant
M        Portions of Transcript from August 25, 2016 Status Conference
N        Affidavit of Shane I. Birnbaum
O        Affidavit of Brent M. Davis
P        Affidavit of Michael LaFrieda
Q        Affidavit of Camilo Lopez
R        Affidavit of Shannon S. Pierce

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENNEMORE CRAIG, P.C.
300 East Second Street - Suite 1510
Reno, Nevada 89501
Tel: (775) 788-2200   Fax:   (775) 786-1177

019

# EXHIBIT A:

# TRADEMARK CERTICATES OF REGISTRATION

# United States of America

### United States Patent and Trademark Office

# LoKai

**Reg. No. 4,429,129**
**Registered Nov. 5, 2013**

LOKAI HOLDINGS LLC (DELAWARE LIMITED LIABILITY COMPANY)
27 WEST 24TH ST
NEW YORK, NY 10010

**Int. Cl.: 14**

FOR: BRACELETS; JEWELRY; RUBBER OR SILICON WRISTBANDS IN THE NATURE OF A BRACELET, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

**TRADEMARK**

FIRST USE 6-4-2013; IN COMMERCE 6-4-2013.

**PRINCIPAL REGISTER**

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-TICULAR FONT, STYLE, SIZE, OR COLOR.

SN 85-170,908, FILED 11-6-2010.

JAY FLOWERS, EXAMINING ATTORNEY



Deputy Director of the United States Patent and Trademark Office

1

LOK000037

# United States of America
## United States Patent and Trademark Office

# LOKAI

**Reg. No. 4,637,357**

**Registered Nov. 11, 2014**

**Int. Cl.: 35**

**SERVICE MARK**

**PRINCIPAL REGISTER**

LOKAI HOLDINGS LLC (DELAWARE LIMITED LIABILITY COMPANY)
12TH FLOOR
170 VARICK STREET
NEW YORK, NY 10013

FOR: RETAIL STORE SERVICES FEATURING JEWELRY, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 6-4-2013; IN COMMERCE 6-4-2013.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NO. 4,429,129.

SER. NO. 86-298,717, FILED 6-3-2014.

JUSTIN SEVERSON, EXAMINING ATTORNEY



*Michelle K. Lee*

**Deputy Director of the United States
Patent and Trademark Office**

2

LOK000038

022

# United States of America

## United States Patent and Trademark Office

# lokai

**Reg. No. 4,640,686**

**Registered Nov. 18, 2014**

**Int. Cl.: 14**

**TRADEMARK**

**PRINCIPAL REGISTER**

LOKAI HOLDINGS LLC (DELAWARE LIMITED LIABILITY COMPANY)
12TH FLOOR
170 VARICK STREET
NEW YORK, NY 10013

FOR: BRACELETS; JEWELRY; RUBBER OR SILICON WRISTBANDS IN THE NATURE OF
A BRACELET, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

FIRST USE 6-0-2013; IN COMMERCE 6-0-2013.

OWNER OF U.S. REG. NO. 4,429,129.

THE MARK CONSISTS OF THE WORD "LOKAI" WITH AN OPEN DOT ABOVE THE LETTER
"I" AND A SOLID DOT BELOW THE LETTER "I".

SER. NO. 86-244,019, FILED 4-7-2014.

JUSTIN SEVERSON, EXAMINING ATTORNEY



*Michelle K. Lee*

**Deputy Director of the United States
Patent and Trademark Office**

LOK000039

023

# United States of America
## United States Patent and Trademark Office

# lokai

**Reg. No. 4,742,254**

**Registered May 26, 2015**

**Int. Cl.: 35**

**SERVICE MARK**

**PRINCIPAL REGISTER**

LOKAI HOLDINGS LLC (DELAWARE LIMITED LIABILITY COMPANY)
12TH FLOOR
170 VARICK STREET
NEW YORK, NY 10013

FOR: ONLINE RETAIL STORE SERVICES FEATURING JEWELRY, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 6-4-2013; IN COMMERCE 6-4-2013.

OWNER OF U.S. REG. NO. 4,429,129.

THE MARK CONSISTS OF THE WORD "LOKAI" WITH AN OPEN DOT ABOVE THE LETTER "I" AND A SOLID DOT BELOW THE LETTER "I".

SER. NO. 86-298,724, FILED 6-3-2014.

JUSTIN SEVERSON, EXAMINING ATTORNEY



Director of the United States
Patent and Trademark Office

LOK000040

024

# United States of America

## United States Patent and Trademark Office



**Reg. No. 4,636,915**

**Registered Nov. 11, 2014**

**Int. Cl.: 14**

**TRADEMARK**

**PRINCIPAL REGISTER**

LOKAI HOLDINGS LLC (DELAWARE LIMITED LIABILITY COMPANY)
12TH FLOOR
170 VARICK STREET
NEW YORK, NY 10013

FOR: BRACELETS; JEWELRY; RUBBER OR SILICON WRISTBANDS IN THE NATURE OF
A BRACELET, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

FIRST USE 1-0-2014; IN COMMERCE 1-0-2014.

THE MARK CONSISTS OF TWO CONCENTRIC STYLIZED WATER DROPLETS CONTAIN-
ING TWO CIRCLES.

SER. NO. 86-244,023, FILED 4-7-2014.

JUSTIN SEVERSON, EXAMINING ATTORNEY



**Deputy Director of the United States**
**Patent and Trademark Office**

LOK000041

025

# United States of America
## United States Patent and Trademark Office



**Reg. No. 4,698,780**

**Registered Mar. 10, 2015**

**Int. Cl.: 35**

**SERVICE MARK**

**PRINCIPAL REGISTER**

LOKAI HOLDINGS LLC (DELAWARE LIMITED LIABILITY COMPANY)
12TH FLOOR
170 VARICK STREET
NEW YORK, NY 10013

FOR: ONLINE RETAIL STORE SERVICES FEATURING JEWELRY, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 6-4-2013; IN COMMERCE 6-4-2013.

THE MARK CONSISTS OF TWO CONCENTRIC STYLIZED WATER DROPLETS CONTAINING TWO CIRCLES.

SER. NO. 86-298,728, FILED 6-3-2014.

JUSTIN SEVERSON, EXAMINING ATTORNEY



**Deputy Director of the United States
Patent and Trademark Office**

6

LOK000042

026

# United States of America

### United States Patent and Trademark Office

# FIND YOUR BALANCE

**Reg. No. 4,870,494**

**Registered Dec. 15, 2015**

**Int. Cl.: 14**

**TRADEMARK**

**PRINCIPAL REGISTER**

LOKAI HOLDINGS, LLC (DELAWARE LIMITED LIABILITY COMPANY)
SUITE 602
36 EAST 31ST STREET
NEW YORK, NY 10016

FOR: BRACELETS; JEWELRY; RUBBER OR SILICON WRISTBANDS IN THE NATURE OF
A BRACELET, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

FIRST USE 6-4-2013; IN COMMERCE 6-4-2013.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 86-623,317, FILED 5-8-2015.

THOMAS MANOR, EXAMINING ATTORNEY



Director of the United States
Patent and Trademark Office

LOK000043

027

# EXHIBIT B:

# COPYRIGHT CERTICATE OF REGISTRATION AND IMAGES

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## VA 1-968-047

**Effective Date of Registration:**
November 03, 2014

---

## Title

| | |
|---|---|
| **Title of Work:** | Lokai Bracelet Hangtag |

---

## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2011 |
| **Date of 1st Publication:** | December 01, 2011 |
| **Nation of 1st Publication:** | United States |

---

## Author

| | |
|---|---|
| • **Author:** | Lokai Holdings, LLC |
| **Author Created:** | *text, 2-D artwork |
| **Work made for hire:** | Yes |
| **Citizen of:** | United States |
| **Domiciled in:** | United States |

---

## Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | Lokai Holdings, LLC |
| | 170 Varick Street, 12th Floor, New York, NY, 10013, United States |

---

## Certification

| | |
|---|---|
| **Name:** | Ronald S. Bienstock, Esq. |
| **Date:** | October 24, 2014 |

---

| | |
|---|---|
| **Correspondence:** | Yes |
| **Copyright Office notes:** | Regarding author information: *Text is name and slogan only; names and slogans not copyrightable. 37 CFR 202.1 |

Page 1 of 1

1

LOK000036

029

Case 3:16-cv-00283-RCJ-VPC   Document 34-2   Filed 01/20/17   Page 3 of 4



Case 3:16-cv-00283-RCJ-VPC   Document 34-2   Filed 01/20/17   Page 4 of 4



# EXHIBIT C:

# IMAGES OF AUTHENTIC LOKAI BRACELETS

Case 3:16-cv-00283-RCJ-VPC   Document 34-3   Filed 01/20/17   Page 2 of 9



Case 3:16-cv-00283-RCJ-VPC   Document 34-3   Filed 01/20/17   Page 3 of 9



Case 3:16-cv-00283-RCJ-VPC   Document 34-3   Filed 01/20/17   Page 4 of 9



Case 3:16-cv-00283-RCJ-VPC   Document 34-3   Filed 01/20/17   Page 5 of 9



LOK000083

Case 3:16-cv-00283-RCJ-VPC   Document 34-3   Filed 01/20/17   Page 6 of 9



LOK00001

5

Case 3:16-cv-00283-RCJ-VPC   Document 34-3   Filed 01/20/17   Page 7 of 9



LOK000002



7



# EXHIBIT D:

# DEPOSITION OF CRAIG HUEFFNER

BAY AREA COURT REPORTING, INC.                www.bar-tampa.com

Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA


LOKAI HOLDINGS, LLC, a Delaware
Corporation,

      Plaintiff,

      vs.                              Case No.
                              3:16-cv-00283-RCJ-VPC

ABSOLUTE MARKETING, CRAIG
HUEFFNER and DOES 1-10,

      Defendants.
................................/




VIDEO DEPOSITION OF CRAIG HUEFFNER

Taken Pursuant to Notice of
Taking Deposition by Counsel
for the Plaintiff




DATE:          Tuesday, November 15, 2016

TIME:          10:00 a.m. to 3:20 p.m.

PLACE:         Bay Area Reporting, Inc.
               620 East Twiggs Street, Suite 305
               Tampa, Florida 33602

REPORTER:      Deborah J. Slinn, RPR, CSR
               Court Reporter, Notary Public
               State of Florida at Large


Bayareareporting@gmail.com                    (866)240-9500

BAY AREA COURT REPORTING, INC.                    www.bar-tampa.com

|   | Page 2 |
|---|--------|
| 1 | APPEARANCES FOR THE PLAINTIFF |
| 2 | Brent "Giles" Davis, Esquire |
|   | Shane I. Birnbaum, Esquire |
| 3 | Scarinci \| Hollenbeck |
|   | 1100 Valley Brook Avenue |
| 4 | Lyndhurst, New Jersey 07071-0790 |
| 5 | Shannon S. Pierce, Esquire |
|   | Fennemore Craig, P.C. |
| 6 | 300 East Second Street, Suite 1510 |
|   | Reno, Nevada 89501 |
| 7 | (via telephone) |
| 8 | Judge Valerie P. Cooke |
|   | 400 South Virginia Street |
| 9 | Reno, Nevada 89501 |
|   | (via telephone) |
| 10 | |
| 11 | APPEARANCE FOR THE DEFENDANTS |
| 12 | Craig Hueffner, Pro Se |
| 13 | |
| 14 | Also Present: Bill Watson (Videographer) |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

|   | Page 4 |
|---|--------|
| 1 | THE VIDEOGRAPHER:  This is a video taken in |
| 2 | the matter of Lokai Holdings, LLC, versus Absolute |
| 3 | Marketing, et al., on November 15, 2016, at 10:00 |
| 4 | a.m. |
| 5 | Counsel, please introduce yourselves for the |
| 6 | record.  Afterwards, the court reporter will swear |
| 7 | in the witness. |
| 8 | MR. DAVIS:  Brent Davis, Scarinci and |
| 9 | Hollenbeck for Plaintiff Lokai Holdings, LLC. |
| 10 | MR. BIRNBAUM:  Shane Birnbaum, Scarinci and |
| 11 | Hollenbeck for Plaintiff Lokai Holdings, LLC. |
| 12 | MS. PIERCE:  And telephonically, Shannon |
| 13 | Pierce of Fennemore Craig on behalf of the |
| 14 | Plaintiff. |
| 15 | CRAIG HUEFFNER:  Being first duly sworn by |
|   | a Notary Public to tell the truth, deposes and |
| 16 | says as follows: |
| 17 | EXAMINATION BY MR. DAVIS: |
| 18 | Q   Good morning, Mr. Hueffner.  Is it Hueffner or |
| 19 | Hueffner? |
| 20 | A   Hueffner. |
| 21 | Q   Hueffner.  Have you ever been deposed before? |
| 22 | A   Yes. |
| 23 | Q   So you understand how this works, I'm going to |
| 24 | ask you questions.  If you don't understand my question, |
| 25 | please let us know or else we'll presume and the record |

|   | Page 3 |
|---|--------|
| 1 | EXAMINATION |
| 2 | |
|   | Witness Name                              Page |
| 3 | |
|   | CRAIG HUEFFNER |
| 4 | |
|   | Direct by Brent Davis, Esquire ............ 4 |
| 5 | Telephonic conference with Judge Cooke .... 99 |
| 6 | |
| 7 | |
|   | ~ooOOoo~ |
| 8 | |
| 9 | |
| 10 | |
| 11 | EXHIBITS |
| 12 | Exhibit   Description                      Page |
| 13 | |
|   | H-1     Request for production             5 |
| 14 | H-2     State of Florida document         12 |
|   | H-3     Dallas Market Center document     15 |
|   | H-4     Boston Gift Show document         16 |
|   | H-5     Photo                             18 |
| 16 | H-6     Letter dated 8-11-15              25 |
|   | H-7     Letter dated 8-18-15              41 |
| 17 | H-8     Bienstock and Michael document    46 |
|   | H-9     Photos                            62 |
| 18 | H-10    Photos                            67 |
|   | H-11    Photo                             68 |
| 19 | H-12    Shipping label                    69 |
|   | H-13    Photo                             73 |
| 20 | Thumb drive                               75 |
| 21 | |
| 22 | (Exhibits retained by Attorney Davis) |
| 23 | |
| 24 | |
| 25 | |

|   | Page 5 |
|---|--------|
| 1 | will presume that you understood the question. |
| 2 | If you need to take a break, just let us know, |
| 3 | we can do that. |
| 4 | Have you -- have you taken any medication |
| 5 | today that would affect your impact to tell the truth? |
| 6 | A   No. |
| 7 | Q   Any drugs or alcohols? |
| 8 | A   No. |
| 9 | Q   Okay.  How did you arrive here today? |
| 10 | A   Uber. |
| 11 | Q   And I want to start, have this marked as |
| 12 | Hueffner 1.  I am going to hand you what's been marked |
| 13 | as H-1, Mr. Hueffner.  Can you tell me what these |
| 14 | documents are? |
| 15 | A   Request for production. |
| 16 | Q   These are your responses to the discovery |
| 17 | requests that were served on you by Lokai? |
| 18 | A   Correct. |
| 19 | Q   And so the first page which is blurry here, I |
| 20 | know you sent a cleaner copy, but you did not provide |
| 21 | initial disclosures; is that correct? |
| 22 | A   Correct. |
| 23 | Q   Okay.  So let's go through that.  Do you have |
| 24 | any witnesses that you intend to call in this |
| 25 | proceeding? |

2 (Pages 2 to 5)

2

043

BAY AREA COURT REPORTING, INC.                    www.bar-tampa.com

|  | Page 6 |
|---|---|
| 1 | A   Not sure yet. |
| 2 | Q   Well, that's actually not the answer that we |
| 3 | need, Mr. Hueffner.  You've been given two chances by |
| 4 | the Court to supply initial disclosures and you haven't. |
| 5 | So, this is a yes or no question. |
| 6 | Do you have any witnesses that you plan to |
| 7 | call at this proceeding? |
| 8 | A   Not sure yet. |
| 9 | Q   With the exception of the documents that you |
| 10 | provided to us, do you have any additional documents |
| 11 | that you plan to use in this proceeding? |
| 12 | A   Possibly. |
| 13 | Q   The judge in this case explained to you twice |
| 14 | in two different telephonic conferences that you have to |
| 15 | report on what was required of initial disclosures; is |
| 16 | that correct? |
| 17 | A   I don't remember. |
| 18 | Q   You don't remember.  Did you attend |
| 19 | telephonically a conference with, a status conference |
| 20 | with the Court, on August 25, 2016? |
| 21 | A   Yes. |
| 22 | Q   Okay.  And you don't remember the judge very |
| 23 | meticulously talking about initial disclosures and your |
| 24 | responsibilities of them. |
| 25 | A   Correct. |

|  | Page 8 |
|---|---|
| 1 | correct? |
| 2 | A   Correct. |
| 3 | Q   Okay.  Let's take a step back.  At anytime did |
| 4 | you sell bracelets that resembled the Lokai bracelet? |
| 5 | A   State the question again. |
| 6 | Q   Did you sell bracelets that had a Lokai tag on |
| 7 | them? |
| 8 | A   Yes. |
| 9 | Q   Okay.  And you are saying you do not have any |
| 10 | of these bracelets left? |
| 11 | A   Asked and answered. |
| 12 | Q   This is my deposition and you will answer the |
| 13 | questions that I ask you, Mr. Hueffner. |
| 14 | A   You asked it and I answered it before. |
| 15 | Q   I'm going to ask a lot of questions a lot of |
| 16 | times and how long we're here is going to depend on how |
| 17 | cooperative you are.  I'm going to ask that again. |
| 18 | A   Asked and answered. |
| 19 | MR. DAVIS:  It's only 7:00 out there; right? |
| 20 | MR. BIRNBAUM:  Judge isn't going to be there. |
| 21 | MS. PIERCE:  Yes, it's only 7:00, but I'll |
| 22 | start keeping a running list. |
| 23 | MR. DAVIS:  Okay. |
| 24 | BY MR. DAVIS: |
| 25 | Q   Did you ever have in your possession bracelets |

|  | Page 7 |
|---|---|
| 1 | Q   And then did you attend telephonically a |
| 2 | status conference, a case management conference, with |
| 3 | the Court on November 4th? |
| 4 | A   Yes. |
| 5 | Q   Do you remember the judge explaining in detail |
| 6 | again what your requirements were under initial |
| 7 | disclosures? |
| 8 | A   I remember talking about disclosures.  And |
| 9 | telling me I need to send them a letter.  Other than |
| 10 | that, I don't -- |
| 11 | Q   But even though your initial, the initial |
| 12 | disclosures that you provided on handwritten note on a |
| 13 | copy of our request for production, the things that said |
| 14 | that you had nothing to disclose you are now saying you |
| 15 | might have something to disclose. |
| 16 | A   Correct. |
| 17 | Q   And -- all right. |
| 18 | So let's go to page two of Exhibit H-1. |
| 19 | So the first request asked for a physical |
| 20 | sample of all products that were offered at anytime |
| 21 | offered for sale or sold by defendant or by any third |
| 22 | party defendants' request which are otherwise in |
| 23 | possession, custody or control defendant which bear or |
| 24 | embody or otherwise use the Lokai bracelet natural |
| 25 | products.  And your answer is not available; is that |

|  | Page 9 |
|---|---|
| 1 | that have the Lokai tag on them? |
| 2 | A   Yes. |
| 3 | Q   Okay.  What did you do with them? |
| 4 | A   Sold some, gave some away.  Threw them in the |
| 5 | garbage. |
| 6 | Q   Where did you throw them in the garbage? |
| 7 | A   In the garbage can. |
| 8 | Q   The location. |
| 9 | A   I don't remember. |
| 10 | Q   You don't remember.  Okay.  How many did you |
| 11 | have that you threw away? |
| 12 | A   I don't remember. |
| 13 | Q   The second request asks for a physical sample |
| 14 | of all documents or other material, products or pieces |
| 15 | including but not limited poster signs, billboards, |
| 16 | advertisements, product brochures and other marketing |
| 17 | material that were used at anytime by defendant or which |
| 18 | otherwise in possession, custody or control of the |
| 19 | defendant which bear embody or otherwise use the Class |
| 20 | 35 trademarks or the Lokai website images. |
| 21 | And your answer is not available; is that |
| 22 | correct? |
| 23 | A   Correct. |
| 24 | Q   Did you ever have in your possession any |
| 25 | materials that would fall into this category? |

3  (Pages 6 to 9)

BAY AREA COURT REPORTING, INC.                    www.bar-tampa.com

Page 10

1    A   Yes.
2    Q   And what did you do with them?
3    A   Threw them in the garbage.
4    Q   When?
5    A   Probably after you sent me a -- when I got the
6    lawsuit.
7    Q   The same thing for the bracelets in request
8    number one?
9    A   Yes.
10   Q   So let me get this straight.  So after you
11   knew there was litigation against you regarding this
12   stuff you destroyed evidence.
13   A   There was no evidence to destroy.
14   Q   You said you had bracelets.
15   A   It's my product, I can do with it what I want
16   to do with it.
17   Q   So, yes, you did dispose of this evidence
18   after the lawsuit was initiated.
19   A   I disposed of my inventory.
20   Q   At any point did you have any sales records
21   regarding the counterfeit Lokai bracelets that you had?
22   A   No.
23   Q   You never kept sales records.
24   A   No.
25   Q   How about purchase records?

Page 11

1    A   No.
2    Q   Okay.  So if you didn't keep records, if you
3    go to page one, two, three, four, five of Exhibit H-1.
4    It's the page that has interrogatories one, two and
5    three on them.
6    A   No, I don't have that page.
7    Q   Yes, you do.  You are on page five.
8    Interrogatory number two, identify the total number of
9    all products identified in interrogatory number one that
10   were sold at anytime by defendant or indirectly by any
11   third parties at defendants' request.
12   And you answered 50 to 60; is that correct?
13   A   Correct.
14   Q   How did you come up with that number if you
15   didn't keep any sales records as you just testified to?
16   A   It was a guess.
17   Q   Anything else on here a guess?
18   A   No, not to my knowledge.
19   Q   Okay.  Also interested in your answer to
20   interrogatory number eight.  Identify all documents and
21   materials, products, or pieces including but not limited
22   to posters, signs, billboards, advertisement, cards,
23   brochures and other marketing materials used by
24   defendant or which are otherwise in possession, custody
25   and control of defendant that bear, embody or otherwise

Page 12

1    or use the Class 35 trademarks and/or the Lokai website
2    images.  And you answered zero; is that correct?
3    A   Correct.
4    Q   Did you ever have a banner or poster like
5    thing that had the Lokai trademark on it?
6    A   Yes.
7    Q   And what did you do with that?
8    A   Threw it in the garage.
9    Q   After you were served with the Complaint in
10   this lawsuit.
11   A   Correct.
12   Q   All right.  Have this marked as H-2.
13   Going to hand you what's been marked as
14   Exhibit H-2, Mr. Hueffner.  If you can take a look at
15   this document.  It's multiple pages, Mr. Hueffner.  Can
16   you take a look at the document, please?
17   A   (Witness complies.)
18   Q   First page of Exhibit H-2 is a printout from
19   the Florida Department of State, Division of
20   Corporations; is that correct?
21   A   Correct.
22   Q   And it's a fictitious name filing for Absolute
23   Marketing; is that correct?
24   A   Correct.
25   Q   The owner information is you; correct?

Page 13

1    A   Correct.
2    Q   And the address you gave the Florida
3    Department of State is 4942 Indian Hills Drive, Racine,
4    Wisconsin 53406; is that correct?
5    A   Correct.
6    Q   And what's that address?
7    A   An address to Racine, Wisconsin.
8    Q   What is your connection to that address?
9    A   Nothing any more.
10   Q   What was it at the time you filed?
11   A   It was a friend's house that I had my mail
12   forwarded to after my divorce.
13   Q   And on the next page you provided the same
14   address to the Florida Department of State?
15   A   Correct.
16   Q   And on the first page it says that the
17   Absolute Marketing ficticious name is still active; is
18   that correct?
19   A   Correct.
20   Q   But you have said that you had terminated this
21   name; isn't that correct.
22   A   Correct?
23   Q   So which one is the truth?
24   A   Well, we got to find the other paperwork from
25   the Division of Corporation, I guess.

4 (Pages 10 to 13)

BAY AREA COURT REPORTING, INC.                    www.bar-tampa.com

| Page 14 | Page 16 |
|---|---|
| 1  Q   You filed something with the Florida | 1  Q   Do you have any connection to that address? |
| 2  Department of State terminating fictitious name use? | 2  A   I lived there for three months. |
| 3  A   I did. | 3      I would like to state that this also says |
| 4  Q   When did you file that? | 4  Absolute Advertising on the top of Exhibit H-3. |
| 5  A   2015, sometime. | 5  Q   It's very nice that you want to state that, |
| 6  Q   Did you cease using Absolute Marketing in | 6  but there is not a question pending, Mr. Hueffner. |
| 7  2015? | 7      I am going to have this marked as H-4. |
| 8  A   Yes. | 8      I'm going to hand you what's been marked as |
| 9  Q   You didn't use Absolute Marketing for any, | 9  Exhibit H-4. We're going to go through this page by |
| 10  anything past 2015? | 10  page. |
| 11  A   Yes, I did. | 11      Page one of H-4 lists Absolute Marketing as |
| 12  Q   Okay. Well, you said -- wait. Didn't you | 12  exhibiting at the Boston Gift Show. Did you exhibit at |
| 13  just testify that you stopped using it in 2015? | 13  the Boston Gift Show, sir? |
| 14  A   I use that and my personal name. | 14  A   I did. |
| 15  Q   I'm confused. So let me understand. You just | 15  Q   And did you sell counterfeit Lokai bracelets |
| 16  testified that in 2015 you filed with the Florida | 16  at the Boston Gift Show? |
| 17  Department of State terminating your use of the | 17  A   I did not. |
| 18  fictitious name Absolute Marketing. | 18  Q   You didn't. What did you sell there? |
| 19  A   With the Florida Department, yes, with the | 19  A   Gift items. |
| 20  Florida Department of State, correct. | 20  Q   Such as -- do you sell ten-foot length |
| 21  Q   But you continued to use Absolute Marketing? | 21  charging cables? |
| 22  A   Correct. | 22  A   Yes. |
| 23  Q   Okay. So why did you terminate it in Florida? | 23  Q   And were you selling those at the Boston Gift |
| 24  A   Because I was no longer in Florida. | 24  Shop? |
| 25  Q   Did you register Absolute Marketing with any | 25  A   Yes. |

| Page 15 | Page 17 |
|---|---|
| 1  other states? | 1  Q   But you did not sell Lokai bracelets. |
| 2  A   I did not. It's a fictitious name. | 2  A   I sold Lokai bracelets, correct. |
| 3  Q   I am going to have this marked as H-3. | 3  Q   You did? |
| 4      I'm going to hand you what's been marked as | 4  A   Correct. |
| 5  H-3. If you could take a look at that exhibit, please. | 5  Q   Okay. But didn't you just say a few minutes |
| 6  A   Yes. | 6  ago that you did not? |
| 7  Q   Okay. And this is, this is from the Dallas | 7  A   You asked if I sold counterfeit Lokai |
| 8  Market Center. Did you exhibit at the Dallas Market | 8  bracelets and I answered that. |
| 9  Center? | 9  Q   Wait. So you are claiming that the Lokai |
| 10  A   Yes. | 10  bracelets that you sold were not counterfeits? |
| 11  Q   Okay. And your contact has the e-mail address | 11  A   I am not privy to that information. |
| 12  of Craig underscore Hueffner at msn.com? | 12  Q   Did you purchase them from Lokai? |
| 13  A   Correct. | 13  A   I don't know. |
| 14  Q   Did you use that e-mail? | 14  Q   Where did you purchase them? |
| 15  A   Yes. | 15  A   Broad question. Cash and Carry events where |
| 16  Q   Do you still use that e-mail? | 16  Lokai was at. |
| 17  A   Yes. | 17  Q   How much did you pay for them per bracelet? |
| 18  Q   And you have another address of 3214 West | 18  A   Anywhere from five to $9. |
| 19  Plaza Drive, Franklin, Wisconsin 53132; is that correct? | 19      In fact, they are all over the place. |
| 20  A   That's what's on the paper. | 20  Q   Not a question pending, sir. |
| 21  Q   Was that the address you provided to the | 21      Do you have a banner for the Lokai bracelets? |
| 22  Dallas Market Center? | 22  A   I do not. |
| 23  A   No. | 23  Q   Did you? |
| 24  Q   Where did they get that address? | 24  A   Yes, I did. |
| 25  A   I have no idea. | 25  Q   And it said it used several Lokai trademarks |

5 (Pages 14 to 17)

046

BAY AREA COURT REPORTING, INC.                www.bar-tampa.com

| Page 18 | Page 20 |
|---|---|

**Page 18**

1  on it; correct?
2      A   It had the Lokai name.
3      Q   And it had the water droplet?
4      A   I don't know what you are looking at.
5      Q   Doesn't matter what I'm looking at, sir.  It
6  was your banner.
7      A   I don't remember.
8      Q   All right.  Well, let's take a look.  Let's
9  mark this as H-5, please.
10         I'm going to hand you what's been marked as
11  Exhibit H-5.  That's a picture of the Absolute Marketing
12  booth at the Boston Gift Show; is that correct?
13      A   Correct.
14      Q   Okay.  So there are Lokai banners on the left
15  side of the picture; is that correct?
16      A   Correct.
17      Q   And there are buckets, two buckets, of Lokai
18  bracelets in front of the banners; isn't that correct?
19      A   I can't tell.
20      Q   You can't tell, okay.  Let's look at the
21  banner.  So both banners say, has the Lokai stylized
22  trademark and the water droplet on it; isn't that true?
23      A   To be very honest with you I don't know where
24  this booth is at.
25      Q   Okay.  But it's your booth.

**Page 19**

1      A   To be very honest with you I don't know where
2  this booth is at.
3      Q   That's not what I asked you.
4      A   I'm not sure.
5      Q   You already testified it was.
6      A   We don't know that this booth was at that
7  show.
8      Q   Oh, I do.  So you had at least two banners
9  that bore the name Lokai.
10      A   No.
11      Q   No?  Those aren't two separate banners?
12      A   No.
13      Q   It's one banner.
14      A   Correct.
15      Q   And somehow I can see through the middle of it
16  to what's behind it?
17      A   Correct.
18      Q   Did you get permission from Lokai to put their
19  name on banners?
20      A   I'm going to claim harassment.  This stuff
21  here was not in discovery.  So I guess maybe we should
22  wait for the judge, to call the judge.  This is not in
23  discovery, any of this.
24      Q   I am going to ask you again, sir.
25      A   And I am going to claim to you I am going to

**Page 20**

1  wait for the judge to get on the phone to answer the
2  question.
3      Q   Sir, we are not going to sit here --
4      A   Yes, we are.
5      Q   -- for hours.
6      A   This is not in discovery.
7      Q   You're refusing to answer the question?
8      A   I'm refusing to answer this.  I do not know
9  what this is and I don't know whose booth this is.
10      Q   You just testified it was your booth.
11      A   I don't know.  You showed me the paper and I
12  asked you what it was.  And then you said --
13      Q   Okay.
14      A   -- showed it to me.
15         MR. BIRNBAUM:  Let's keep our voices down,
16  every one.
17      Q   We'll come back to this.  We'll come back.
18  Let's go back to H-4.  Let's go to the second
19  page of H-4.
20      A   (Witness complies.)
21      Q   This is listing Absolute Marketing as showing
22  at the -- at some kind of show in Los Angeles; is that
23  correct?
24      A   Yes.
25      Q   And you had a booth there?

**Page 21**

1      A   I did not.
2      Q   You didn't?
3      A   No.
4      Q   Sir, stay on the page I'm at, please.
5      A   (Witness complies.)
6      Q   Did you register to show there?
7      A   Correct.
8      Q   You just didn't show up?
9      A   Correct.
10      Q   Let's go to the next page.
11      A   (Witness complies.)
12      Q   This is for a show at the Las Vegas Convention
13  Center?
14      A   Correct.
15      Q   And Absolute Marketing registered a booth
16  there?
17      A   Correct.
18      Q   Absolute Marketing had a booth there?
19      A   Correct.
20      Q   And you sold what you claim to be legitimate
21  Lokai bracelets at that show?
22      A   I did not sell Lokai at this event.  This is
23  September 18th to the 21st, 2016.
24      Q   Were you planning to sell the Lokai
25  bracelets at --

6 (Pages 18 to 21)

047

BAY AREA COURT REPORTING, INC.                    www.bar-tampa.com

| Page 30 |
|---|
| 1   might be documents somewhere in the world that you may |
| 2   want to use? |
| 3       A   I believe I will have documents and photos to |
| 4   use.  I believe I will have documents and photos to use. |
| 5       Q   Okay.  But you answered that none were |
| 6   available to all of your production requests. |
| 7       A   At the time of the questions asked that was |
| 8   true.  After that, now there are. |
| 9       Q   And where are these documents? |
| 10      A   On the Internet. |
| 11      Q   What are these documents? |
| 12      A   I sent them to you guys. |
| 13      Q   Are there any additional documents? |
| 14      A   Yes. |
| 15      Q   And where are they?  Why didn't you produce |
| 16   those? |
| 17      A   I was going to produce those to the Court, |
| 18   sir.  You need to produce them to us in response to |
| 19   discovery.  Considering your deposition is today, the |
| 20   Court ordered you to have all the documents produced to |
| 21   us by this past Thursday.  Shouldn't you have produced |
| 22   the documents by this past Thursday? |
| 23      A   I got more information yesterday about Lokai. |
| 24      Q   What sort of information? |
| 25 |

| Page 31 |
|---|
| 1       A   Broad speculation.  I need to show you -- I'll |
| 2   get you the paperwork. |
| 3       Q   No, describe it to me.  Tell me what it is. |
| 4   We're here. |
| 5       A   That your Lokai are being sold at hundreds of |
| 6   locations throughout the United States between the price |
| 7   range of a dollar and $5. |
| 8       Q   So the fact that there are other counterfeit |
| 9   Lokais out there that Lokai hasn't gotten to yet or is |
| 10   unaware of is relevant why? |
| 11      A   We do not know if they are counterfeit or not. |
| 12      Q   Okay.  So you testified earlier that you threw |
| 13   out the remaining bracelets with the Lokai tags after |
| 14   this lawsuit was filed; is that correct? |
| 15      A   Yes. |
| 16      Q   You have been involved in lawsuits before. |
| 17      A   Yes. |
| 18      Q   Okay.  And you were aware you were being sued |
| 19   over those very bracelets that you threw out? |
| 20      A   I was served a lawsuit. |
| 21      Q   And the lawsuit was alleged that you had sold |
| 22   counterfeit Lokai bracelets; correct? |
| 23      A   Correct. |
| 24      Q   The Lokai bracelets with tags that said Lokai |
| 25   in your possession after you received the lawsuit you |

| Page 32 |
|---|
| 1   threw them out. |
| 2       A   Correct. |
| 3       Q   Okay.  You were aware that those were the |
| 4   bracelets at issue in the lawsuit you were just served |
| 5   with; correct? |
| 6       A   Correct. |
| 7       Q   Why did you decide to throw them out at that |
| 8   moment? |
| 9       A   Because that's what I was asked to do. |
| 10      Q   When were you asked to do that, by whom? |
| 11      A   Someone from the event I was at. |
| 12      Q   Who? |
| 13      A   I don't remember. |
| 14      Q   What did they look like? |
| 15      A   White woman. |
| 16      Q   What was her position with the event? |
| 17      A   I don't know. |
| 18      Q   So anyone that walks up to you and tells you |
| 19   to do something you do it. |
| 20      A   They said they had a letter that -- the staff |
| 21   member told me they had a letter that product could not |
| 22   be sold at this event from a letter from you guys, so we |
| 23   disposed of the product. |
| 24      Q   Okay.  But they didn't tell you to dispose of |
| 25   it, they just said you couldn't sell it. |

| Page 33 |
|---|
| 1       A   I had nowhere else to put it. |
| 2       Q   You didn't think it would be prudent to hold |
| 3   onto the bracelets. |
| 4       A   I did not. |
| 5       Q   You didn't think it was problematic that you |
| 6   were disposing of the bracelets that were at issue of a |
| 7   lawsuit which you say you were already in possession of. |
| 8       A   I did not. |
| 9       Q   And the same thing for your marketing |
| 10   materials? |
| 11      A   Correct. |
| 12      Q   But you are claiming that they weren't |
| 13   counterfeit? |
| 14      A   Correct. |
| 15      Q   How would we be able to determine if they are |
| 16   counterfeit or not if you dispose of them? |
| 17      A   I have no idea.  I can only go back, and I am |
| 18   not going to guess or speculate, from conversations I |
| 19   had with your lawyer prior to that. |
| 20      Q   How was the stuff -- the material that you |
| 21   were selling at the event in Reno, how did it arrive at |
| 22   the convention hall? |
| 23      A   I don't remember. |
| 24      Q   Sir, the court reporter has asked you several |
| 25   times not to put your hands in front of your mouth. |

9  (Pages 30 to 33)

BAY AREA COURT REPORTING, INC.                    www.bar-tampa.com

| Page 34 |
|---|
| 1    A  I don't remember. |
| 2    Q  How did you get to the -- how did you get to |
| 3  Reno? |
| 4    A  I flew there. |
| 5    Q  And was the event at the airport? |
| 6    A  No. |
| 7    Q  How did you get from the airport to the event? |
| 8    A  Either a rental car or an Uber. |
| 9    Q  Who just texted you, sir? |
| 10   A  Some girl.  I can put it on airplane mode. |
| 11   Q  That's what I asked. |
| 12       Did you bring the goods with you on the |
| 13  flight? |
| 14   A  I don't remember. |
| 15   Q  You display a fair amount of product on your |
| 16  booths; correct? |
| 17   A  Correct. |
| 18   Q  Boxes and boxes of material; correct? |
| 19   A  Correct. |
| 20   Q  You don't remember if you checked several |
| 21  boxes of merchandise when you flew to Reno? |
| 22   A  Correct. |
| 23   Q  Do you normally have the goods -- if you are |
| 24  flying to an event do you normally bring the goods with |
| 25  you on the flight? |

| Page 35 |
|---|
| 1    A  Every situation is different. |
| 2    Q  Okay.  So how do you -- tell me the various |
| 3  ways you get the material you sell at these shows to the |
| 4  show. |
| 5    A  Ship.  They would be shipped. |
| 6    Q  Okay.  So if that's your general practice, |
| 7  does that help your memory?  Did you ship the products |
| 8  to the Reno show? |
| 9    A  I don't remember. |
| 10   Q  Well, when I asked you what your normal |
| 11  practice was the only thing you came up with was |
| 12  shipped.  So if you were deviating from your normal |
| 13  practice I would think that that would stand out. |
| 14  So did you ship the products to the Reno show? |
| 15   A  I don't remember. |
| 16   Q  Did you take the products, the several boxes |
| 17  as you've already identified, and checked them as |
| 18  luggage on your flight? |
| 19   A  It's a broad question.  Can you please restate |
| 20  the question? |
| 21   Q  When you were shipping the material that you |
| 22  were selling and displaying at the Reno trade show that |
| 23  you were served at; do you understand it so far? |
| 24   A  Yes. |
| 25   Q  Did you bring the several boxes of that |

| Page 36 |
|---|
| 1  material with you to the airport? |
| 2    A  No. |
| 3    Q  Okay.  So logically you didn't bring them with |
| 4  you on the plane; is that correct? |
| 5    A  I can't guess. |
| 6    Q  Well, how did they get to the airport if you |
| 7  didn't bring them with you? |
| 8    A  I can't guess.  It was six months ago. |
| 9    Q  The marketing materials, these poster, or |
| 10  posters, where did you have them made or where did you |
| 11  get them? |
| 12   A  Cash and Carry event. |
| 13   Q  You purchased the poster from a third party? |
| 14   A  I don't remember. |
| 15   Q  You don't remember who -- where you got large |
| 16  posters for the Lokai bracelets? |
| 17   A  I don't remember. |
| 18   Q  Did you have to have them printed -- did you |
| 19  order a specific printing? |
| 20   A  I did not. |
| 21   Q  So you just bought these posters from a third |
| 22  party. |
| 23   A  I don't remember. |
| 24   Q  Did you find them in the street? |
| 25   A  I did not. |

| Page 37 |
|---|
| 1    Q  Okay.  You bought them. |
| 2    A  I did not. |
| 3    Q  They were given to you. |
| 4    A  That's my assumption, but I cannot guess. |
| 5    Q  So you have no recollection of where these |
| 6  posters came from. |
| 7    A  I don't remember. |
| 8    Q  When did you dispose of those? |
| 9    A  I don't remember. |
| 10   Q  Are you sure you disposed of them? |
| 11   A  Correct. |
| 12   Q  How did you dispose of them? |
| 13   A  Dumpster. |
| 14   Q  Where was the dumpster? |
| 15   A  In Reno. |
| 16   Q  Okay.  So again you remember you disposed of |
| 17  them after you received the lawsuit. |
| 18   A  Correct. |
| 19   Q  And because they are no longer in your |
| 20  possession there is no way to tell exactly what they |
| 21  said on them. |
| 22   A  I cannot guess. |
| 23   Q  Did you have any other materials that said |
| 24  Lokai on them? |
| 25   A  I don't remember. |

10 (Pages 34 to 37)

BAY AREA COURT REPORTING, INC.                    www.bar-tampa.com

### Page 38

1    Q   Were the bracelets that you sold individually
2    wrapped in plastic?
3    A   Some were.
4    Q   Did you place them in the plastic individual
5    wrapping or did you receive them like that?
6    A   I received them like that.
7    Q   This material that you did provide, these
8    documents that you did provide in discovery, do you know
9    any of the individuals who were selling these alleged
10   Lokai bracelets for one to $5?
11   A   I do not.
12   Q   Okay.  Do you know anyone who has firsthand
13   knowledge of these sales?
14   A   I do not.
15   Q   You also testified that you didn't know if
16   these bracelets being sold for one to $5 were
17   counterfeit or not.  So what could you do to find that
18   out?
19   A   I never said that.
20   Q   You didn't testify earlier that when I asked
21   you about the documents that you provided in discovery
22   that showed the sale of counterfeit bracelets, you
23   didn't answer that you don't know if they are
24   counterfeit or not?
25   A   What you just asked was one to $5.

### Page 39

1    Q   That doesn't answer my question, sir.  Earlier
2    when I asked you about this material that you provided
3    in discovery that had listings of product purporting to
4    be Lokai bracelets, and I referred to them as
5    counterfeits, did not you answer you don't know if they
6    are counterfeits ore not?
7    A   Correct, I did answer that.
8    Q   Okay.  So how do we find out if they are
9    counterfeits?
10   A   I guess you would purchase them and -- I don't
11   know.
12   Q   We would have to examine the actual bracelets,
13   correct?
14   A   I guess.
15   Q   Just like if we -- if you hadn't disposed of
16   the inventory you had we could examine those bracelets
17   and determine whether they were counterfeits or not.
18   A   I cannot guess.
19   Q   I am not asking you to guess.
20   A   Repeat the question.
21   Q   If you had not disposed of your inventory they
22   could be physically examined; yes?
23   A   Correct.
24   Q   And once they were physically examined they
25   could be determined whether they were legitimate Lokai

### Page 40

1    bracelets or not; correct?
2    A   I don't know.
3    Q   You just testified that if you physically
4    examined, you would have to physically examine a
5    bracelet to determine whether or not it's counterfeit;
6    is that correct?
7    A   Correct.
8    Q   If we were able to physically inventory
9    examine your inventory we would be able to determine
10   whether they were counterfeits or not.
11   A   Correct.
12   Q   So it would have been really helpful if you
13   didn't destroy your inventory.
14       MR. DAVIS:  Can you read back the question,
15   please? I don't think he heard it.
16       (The record was read by the reporter)
17   A   Restate the question.
18       MR. DAVIS:  Can you repeat the question again,
19   please?
20   A   It's a statement.
21       (The record was read by the reporter)
22   Q   That's a question, sir.
23   A   I cannot guess.
24   Q   And it would have been -- we would have been
25   able to examine the posters if you had not destroyed

### Page 41

1    them or disposed of them; correct?
2    A   I guess.
3    Q   But as soon as you got the lawsuit you threw
4    away everything that said Lokai on it.
5    A   Correct.
6    Q   Knowing that there was a lawsuit against you
7    involving Lokai.
8    A   Restate the question.
9    Q   You threw out everything that said Lokai on it
10   in your possession after you knew there was a lawsuit
11   filed by Lokai against you.
12   A   Correct.
13   Q   Let's go back to Exhibit H-7, please.  Exhibit
14   H-7 is a letter dated August 18th, 2015, from the firm
15   of Bienstock and Michael to you; is that correct?
16   A   Correct.
17   Q   To the e-mail Craig underscore Hueffner at
18   msn.com; correct?
19   A   Correct.
20   Q   And it was physically sent to the address 4942
21   Indian Hills Drive, Racine, Wisconsin; correct?
22   A   That's what's stated on this paper.
23   Q   Okay.  And the Indian Hills Drive address is
24   the same one that you used when you registered Absolute
25   Marketing at various trade shows; correct?

11 (Pages 38 to 41)

Bayareareporting@gmail.com                        (866)240-9500

9

BAY AREA COURT REPORTING, INC.                    www.bar-tampa.com

| | Page 42 |
|---|---|
| 1 | A  Correct. |
| 2 | Q  Okay.  And with the State of Florida; correct? |
| 3 | A  Correct. |
| 4 | Q  Okay.  Did you receive this letter? |
| 5 | A  No. |
| 6 | Q  Were you still having your mail sent to 4942 |
| 7 | Indian Hills Drive -- |
| 8 | A  No. |
| 9 | Q  -- August 2015? |
| 10 | But you were still using it to register with |
| 11 | trade shows in 2016. |
| 12 | A  No. |
| 13 | Q  Can you look at page, Exhibit H-4, sir?  Page |
| 14 | one, the address is 4942 Indian Hills; correct? |
| 15 | A  Correct. |
| 16 | Q  Page two, 4942 Indian Hills; correct? |
| 17 | A  Correct. |
| 18 | Q  Same with every other registration with the |
| 19 | exception of the Surf Expo which doesn't list a street |
| 20 | address; correct? |
| 21 | A  Correct. |
| 22 | Q  Okay.  Were you or were you not using the 4942 |
| 23 | Indian Hills address to register at these shows that |
| 24 | were held in 2016? |
| 25 | A  I was not. |

| | Page 43 |
|---|---|
| 1 | Q  Did -- |
| 2 | A  Like I stated before, if you've been to events |
| 3 | for a long period of time, you just say repeat the |
| 4 | contract. |
| 5 | Q  But because you didn't use that address you |
| 6 | didn't feel a need to update? |
| 7 | A  Correct. |
| 8 | Q  In case anyone needed to contact you? |
| 9 | A  Correct. |
| 10 | Q  Because you didn't want to be contacted? |
| 11 | A  No, I have no reason to be contacted. |
| 12 | Q  You can't think of what happens if you sell a |
| 13 | product to somebody and it's defective shouldn't they |
| 14 | have a way to get in touch with you? |
| 15 | A  No warranty, no returns. |
| 16 | Q  How long have you been showing at these |
| 17 | events? |
| 18 | A  I have been a gypsy my whole life. |
| 19 | Q  That's not the question, sir.  How long have |
| 20 | you been showing at these events?  How long have you |
| 21 | been selling product at these events? |
| 22 | A  Twenty-five years. |
| 23 | Q  Have you ever sold counterfeit products |
| 24 | before? |
| 25 | A  I have not. |

| | Page 44 |
|---|---|
| 1 | Q  Have you ever been accused of selling |
| 2 | counterfeit products before? |
| 3 | A  I have not. |
| 4 | Q  Have you ever accidentally purchased |
| 5 | counterfeit products before that you determined later on |
| 6 | were not real? |
| 7 | A  I don't know. |
| 8 | Q  Have you ever asked for verification of what |
| 9 | the product you are purchasing are legitimate products |
| 10 | and not counterfeits? |
| 11 | A  I have not. |
| 12 | Q  Sir, you have testified you have been through |
| 13 | lawsuits before; yes? |
| 14 | A  Yes. |
| 15 | Q  Did you have to produce discovery in those |
| 16 | lawsuits? |
| 17 | A  Yes. |
| 18 | Q  So you were aware that on the date you were |
| 19 | served with this current lawsuit you were aware of the |
| 20 | discovery process in a lawsuit. |
| 21 | A  My last lawsuit was a long time ago and it had |
| 22 | nothing to do with this type of lawsuit. |
| 23 | Q  That's not my question, sir.  My question was, |
| 24 | you just testified that you knew that lawsuits, there |
| 25 | was a discovery process which you would be asked to |

| | Page 45 |
|---|---|
| 1 | produce, answer questions and produce documents and |
| 2 | things.  You answered yes; isn't that correct? |
| 3 | A  Correct. |
| 4 | Q  Okay.  So if you were aware of that, why did |
| 5 | you throw out everything that said Lokai on it? |
| 6 | A  So I didn't have to ship it to another show |
| 7 | and I wasn't going to sell it anymore. |
| 8 | Q  Knowing that you were going to be asked to |
| 9 | produce things in this lawsuit? |
| 10 | A  I didn't know that. |
| 11 | Q  You just testified you were aware of how |
| 12 | discovery worked in a lawsuit.  And that you had been |
| 13 | sued prior. |
| 14 | A  A long time ago I was sued. |
| 15 | Q  Did you forget in intervening time that you |
| 16 | had to produce things in discovery? |
| 17 | A  I had an attorney at that time so, yes, I did. |
| 18 | Q  So your claim is that H-7, you've never seen |
| 19 | this document? |
| 20 | A  Correct. |
| 21 | Q  There did come a time where you did finally |
| 22 | have contact with -- as my firm was known at the time |
| 23 | Bienstock and Michael; is that correct? |
| 24 | A  I don't remember. |
| 25 | Q  Well, maybe this will refresh your memory. |

12 (Pages 42 to 45)

051

BAY AREA COURT REPORTING, INC.                    www.bar-tampa.com

---

**Page 54**

1   Q.   Okay.  Thank you.  So in that statement you
2   are referring to these communications with Mr. Birnbaum
3   in April of 2016; correct?
4       A.   I do not remember.  I'd have to go through
5   that and read that.  I can't guess.
6       Q.   Were you telling the Court that you stopped
7   selling the Lokai bracelets after you were contacted by
8   Mr. Birnbaum in April of 2016?
9       A.   I don't remember.
10      Q.   Well, did you continue to sell Lokai bracelets
11  after Mr. Birnbaum contacted you in April of 2016?
12      A.   It's a broad question.
13      Q.   It's not a broad question, sir.  Did you or
14  did you not continue to sell bracelets with Lokai tags
15  on them after April 5th, 2016?
16      A.   Yes.
17      Q.   But you said you hadn't sold that product for
18  three or four months to the Court.
19      A.   Once again, you are putting words into my
20  mouth and you are not construing what was said.  I said
21  after -- answer the question.  Just state the question.
22      Q.   So you are saying when you were served you
23  hadn't sold that product for three or four months.  Is
24  that what you meant when you said that to the Court?
25      A.   Correct.

---

**Page 55**

1       Q.   But you were selling these bracelets at the
2   show you were served at.
3       A.   No, I was not.
4       Q.   You weren't?
5       A.   I was not.
6       Q.   You weren't selling Lokai?
7       A.   I was not.
8       Q.   You did didn't display a Lokai banner?
9       A.   How many questions are you going to ask me?
10      Q.   As many as I want, sir.
11      A.   Well, then ask them in a proper sense.  And
12  get to the point.
13      MR. DAVIS:  Can you re-read my last question?
14      A.   There was three questions.
15      Q.   Sir.
16      A.   Don't sir me.
17      Q.   I will sir you.
18      A.   Sir me all you want.
19      Q.   You are being disruptive, sir.  I asked the
20  court reporter to read back the last question.
21      Who are you texting, sir?
22      A.   I am not texting anybody.
23      Q.   Are you going to review your Internet paper on
24  depositions or are you going to read something else?
25      A.   I'm going to review my Internet, my

---

**Page 56**

1   objections.
2       Q.   Okay.  So make your objection.  You still have
3   to answer the question unless you are claiming
4   privilege.
5       A.   I'm going to claim harassment.
6       Q.   You can claim harassment all you want.  Still
7   means you have to answer the question, sir, unless
8   there's privilege attached.
9       Are you married?
10      A.   I am not.
11      Q.   You are not married, so there goes spousal
12  privilege.  You don't have an attorney.
13      A.   Harassment.
14      Q.   Have you spoken to a priest, a rabbi or an
15  imam about this?
16      A.   Privilege.
17      Q.   Not -- have you spoken to a religious figure
18  about this case?  Yes or no.  That's not a privilege
19  question.
20      A.   Yes, I have.
21      Q.   You have.  Okay.  Well, then I can't ask you
22  about those conversations.  So I'm going to ask you
23  again, did you display a Lokai banner at the Nevada
24  trade show, or the Nevada show that you were served the
25  Complaint of this lawsuit at?

---

**Page 57**

1       A.   Yes.
2       Q.   But you weren't selling Lokai bracelets?
3       A.   I was not.
4       Q.   So you just hung this sign for product you
5   weren't selling?
6       A.   Correct.
7       Q.   There weren't bins marked with sizes of
8   bracelets with bracelets in them?
9       A.   I don't remember.
10      Q.   Did you have Lokai bracelets at that show?
11      A.   I don't remember.
12      Q.   Did you have a girl working with you at that
13  show?
14      A.   I don't remember.
15      Q.   You don't remember?  I just need to show him
16  to refresh his memory.
17      (Discussion held off the record)
18      MR. DAVIS:  All right.  You know, this may
19  take a few minutes.  Let's take a break.
20      THE VIDEOGRAPHER:  The time is 11:29 a.m.
21  We're now off the record.
22      (Recess taken)
23      THE VIDEOGRAPHER:  The time is 11:46 a.m.
24  We're now back on the record.
25      ////

---

15 (Pages 54 to 57)

052

BAY AREA COURT REPORTING, INC.                www.bar-tampa.com

| Page 58 |
| --- |

1  BY MR. DAVIS:
2      Q   Mr. Hueffner, you testified earlier that you
3  discussed this matter with a religious figure; is that
4  correct?
5      A   Yes.
6      Q   What were the dates that you had those
7  discussions?
8      A   I don't remember.
9      Q   And who was this figure?
10     A   A priest.
11     Q   Okay.  And where was this priest located?
12     A   Notre Dame.
13     Q   In Indiana?
14     A   Paris.
15     Q   Did he speak English?
16     A   Yes.
17     Q   When were you in Paris?
18     A   Three weeks ago.
19     Q   How did you get to Paris?
20     A   Flew.
21     Q   What were you doing in Paris?
22     A   Sightseeing.
23     Q   How did you pay for your plane ticket?
24     A   I didn't.
25     Q   How did you get the plane ticket?

| Page 59 |
| --- |

1      A   Gifted.
2      Q   Gifted from whom?
3      A   A friend.
4      Q   The friend's name?
5      A   Not relevant to the case.
6      Q   Your friend's name.
7      A   Not relevant to the case.
8      Q   That's not an objection that you get to place
9  on the record and not answer, sir.  Your objection is
10 noted.  What's the name of the person who gave you this
11 plane ticket to Paris?
12     A   Harrah's Casino.
13     Q   I'm sorry?
14     A   Harrah's Casino.
15     Q   So you're friends with a corporate entity?
16     A   No, I had a free offer.
17     Q   What was included in this offer?
18     A   A cruise and an airline ticket.
19     Q   How long were you in Paris?
20     A   Seven days.
21     Q   How many conversations did you have with this
22 priest at Notre Dame?
23     A   One.
24     Q   All right.  When did you stop selling the
25 bracelets that you had in your possession with the Lokai

| Page 60 |
| --- |

1  tags on them?
2      A   The date I got served the papers.
3      Q   Okay.  That was the date that you stopped
4  selling them.
5      A   Correct.
6      Q   So you continued to sell them after your
7  April 5th, 2016, e-mail exchange with Mr. Birnbaum?
8      A   Correct.  I wasn't told I couldn't do that.  I
9  complied with everything that he said in his e-mail and
10 he didn't comply --
11     Q   There is not a question pending.
12         Did you get permission from Lokai to use their
13 name on the banner or banners that you hung on your
14 booths?
15     A   No.
16     Q   All right.  Video, please.  I'm going to show
17 you a video to refresh your memory.  If you remember I
18 asked you if there was a girl that was working with you
19 at the Nevada trade show.  Do you still not remember if
20 that's a yes or no?
21     A   Correct.
22     Q   All right.  Maybe this will refresh your
23 memory.
24     MR. BIRNBAUM:  Sound, if that helps.  Turn the
25 sound on.

| Page 61 |
| --- |

1      MR. DAVIS:  Sorry.
2      A   That lady wasn't working for me.
3      Q   She wasn't?
4      A   No.
5      Q   Who was she?
6      A   I have no idea.  Actually, I have an idea.
7  That girl is the girlfriend of the boyfriend who is
8  taking the videotape.
9      Q   So she was not working for you?
10     A   No.
11     Q   Okay.  Did you give her any bracelets with the
12 Lokai tags on them throughout the course of that show?
13     A   Yes.
14     Q   How many?
15     A   I don't remember.
16     Q   And you had a Lokai banner displayed at that
17 show?
18     A   I did.
19     Q   But you testified that you weren't selling
20 them?
21     A   Correct.
22     Q   Did you intend to sell them at that show?
23     A   Yes.
24     Q   Okay.  But you didn't sell them because you
25 were actually told not to after you were served by the

16  (Pages 58 to 61)

Bayareareporting@gmail.com                    (866) 240-9500

BAY AREA COURT REPORTING, INC.                    www.bar-tampa.com

### Page 62

1  organizers of the show; correct?
2      A   Correct.
3      Q   So had you not been served and had the event
4  organizers told you you couldn't sell them, you would
5  have sold them.
6      A   Correct.
7      Q   I think we're on nine; is that right?  Have
8  this marked as H-9, please.  I am going to hand you
9  what's been marked as Exhibit H-9.
10         Did you have permission from Lokai to use --
11  strike that.
12         You just testified you did not have permission
13  to use Lokai's name.  Did you have permission to use
14  their stylized logo?
15      A   No.
16      Q   Did you have permission to use the water
17  droplet logo?
18      A   No.
19      Q   Did you have permission to use the service
20  mark, Find your Balance?
21      A   No.
22      Q   All right.  Look at the first page of H-9.
23         Is this representative of the bracelets that
24  you were selling or that you had in your possession at
25  the Nevada show?

### Page 63

1      A   I don't know.
2      Q   So in the April 2016 e-mail exchange you had
3  with Mr. Birnbaum you said you only had the clear
4  colored bracelets; is that correct?
5      A   Correct.
6      Q   But the bracelets, bracelets shown on H-9,
7  pages 3 and 4, are pink colored; correct?
8      A   Yes.
9      Q   Did you have other bracelets besides the clear
10  colored ones with the Lokai tag attached in your
11  possession at the Nevada show?
12      A   Yes.
13      Q   Did you have them at the Boston show?
14      A   I don't remember.
15      Q   Is it possible that you made a
16  misrepresentation to Mr. Birnbaum in that e-mail that
17  you did have more than one color Lokai bracelet?
18      A   I wasn't at that show the whole time, so I
19  don't know what was there.
20      Q   Was somebody else working with you in the
21  Boston show?
22      A   Yes.
23      Q   Who?
24      A   Someone from Craig's List.
25      Q   Do you have -- how did you contact that

### Page 64

1  person?
2      A   Through Craig's List.
3      Q   Do you have the e-mails?
4      A   I do not.
5      Q   What happened to them?
6      A   Erased them.  Text, some were texted.
7      Q   Who is your cell phone provider?
8      A   Sprint.
9      Q   How long have you been with Sprint with this
10  number?
11      A   Twenty years.
12      Q   Would you prefer that you contacted Sprint for
13  your cell phone records or would you prefer if we did?
14      A   Doesn't matter.
15      Q   Isn't it true that you distributed two Lokai
16  bracelets at the Nevada trade show?
17      A   I think I gave some for free, yeah.
18      Q   So that's a yes, you distributed bracelets,
19  Lokai bracelets, at the Nevada trade show?
20      A   I gave some away for free, yes.
21      Q   Do you know the Craig's List person's name?
22      A   I do not.
23      Q   How much were you selling the Lokai bracelets
24  for?
25      A   Sometimes I would sell them for $10.

### Page 65

1      Sometimes I would give them away free on a prize wheel.
2      Sometimes I would sell them for 15, two for 25.
3      Q   How much did you pay per bracelet for them?
4      A   Anywhere from, like, five to S9, depending on
5  where I was at.
6      Q   You don't remember where you purchased them
7  though?
8      A   Cash and Carry events.
9      Q   Where?
10      A   Atlanta, Dallas, L.A., Seattle.
11      Q   And you made purchases --
12      A   Denver.
13      Q   -- at all of those shows?
14      A   I don't remember where I was at.  I do so many
15  shows.
16      Q   How would you pay for them?
17      A   Cash.
18      Q   Would you have gotten a receipt?
19      A   No.
20      Q   Do you give receipts?
21      A   No.
22      THE VIDEOGRAPHER:  Could you take the
23  transmitter out of your pocket, it's making some
24  noise.
25      MR. DAVIS:  I'm sorry.

17  (Pages 62 to 65)

054

BAY AREA COURT REPORTING, INC.                    www.bar-tampa.com

---

**Page 66**

1   BY MR. DAVIS:
2      Q   Do you give receipts at shows?
3      A   I do not.
4      Q   What payment methods do you accept at shows?
5      A   Cash.
6      Q   Do you accept credit cards?
7      A   PayPal sometimes.
8      Q   PayPal.  Do you have PayPal records for any
9   sales of Lokai bracelets?
10     A   I do not.
11     Q   Have you looked?
12     A   I do not.
13     Q   That's not my question, sir.  Did you review
14  your PayPal account to see if you have any--
15     A   I do not have any accounts that say Lokai on
16  them.
17     Q   That's not what I asked you, sir.  You just
18  testified you occasionally accept PayPal as payment for
19  goods you sell at shows; is that correct?
20     A   Yes.
21     Q   Did you ever accept PayPal for the bracelets
22  that you sold that had a Lokai tag on them?
23     A   I did not.
24     Q   And how do you know that?
25     A   It's just a guess.

**Page 67**

1      Q   Okay.  So you don't know that.
2      A   No.
3      Q   So it's possible you did?
4      A   Correct.
5      Q   Did you review your PayPal account in
6   preparing your discovery responses in this case?
7      A   I did not.
8      Q   So your testimony is that you did not review
9   your possible sales records in response to the discovery
10  request that you received in this case?
11     A   I do not itemize what I sell.  So I would have
12  no receipts for any Lokai that were sold, or any cords
13  that were sold or anything else I sold.  I do not
14  itemize receipts.
15     Q   But you did not review your PayPal account or
16  produce any documents from it.
17     A   I did not.
18     Q   Okay.  May I have this marked as H-10.
19         Hand you what's been marked as H-10.
20         (Document handed to witness)
21     Q   Are those the tables for your booth at the
22  Reno event that you were served at?
23     A   I have no idea.
24     Q   It says Absolute Marketing on it; is that
25  correct?

**Page 68**

1      A   Yes.
2      Q   So you were using the Absolute Marketing name
3   at this show?
4      A   Correct.
5      Q   Have this marked as H-11.
6         Let me show you what's been marked as H-11.
7         You had that sign with you at the Reno show?
8      A   I don't remember.
9      Q   Did you have that sign in your possession at
10  any point?
11     A   I don't remember.  It's six months ago.
12     Q   Is that your handwriting?
13     A   Possibly.  I can't guess.
14     Q   Did you ever create a sign that had Lokai,
15  $15, or two for 25?
16     A   Yes.
17     Q   Okay.  Is that it?
18     A   I don't know.
19     Q   If it was in the material at your booth at
20  Reno can we assume it's yours?
21     A   Yes.
22         I would like to strike my answer from the
23  Boston show because I do remember I worked that one by
24  myself.
25     Q   Okay.  You don't get to strike any answers,

**Page 69**

1   sir.
2      A   I would like to redo my answer for that show
3   from Boston that I worked it by myself.  I would also
4   like to state that I do many shows throughout the year
5   and I don't remember who works for me or who doesn't
6   work for me, but that show I remember I worked that one
7   by myself and it was very slow.
8      Q   Okay.  Have this marked as H-12.
9         Do you still have any PayPal records during
10  the time period which you sold bracelets with the Lokai
11  tag on them?
12     A   No.
13     Q   Did you delete them from your PayPal account?
14     A   I just got a PayPal account.
15     Q   When?
16     A   Within the last 30 days.
17     Q   Did you ever have a PayPal account previous to
18  that?
19     A   I did not.
20     Q   Ever?
21     A   I did not.
22     Q   Did you ever purchase anything on eBay?
23     A   No.
24     Q   Have you ever sold anything on eBay?
25     A   No.

18 (Pages 66 to 69)

055

BAY AREA COURT REPORTING, INC.                    www.bar-tampa.com

## Page 70

1    Q  What e-mail address did you use to register
2  the PayPal account?
3    A  I can't guess.
4    Q  All right. I'm actually a little confused
5  now. Because a few minutes ago you testified that you
6  wouldn't be able to tell from the PayPal records if the
7  sale was for any Lokai bracelets; is that correct?
8    A  Correct.
9    Q  Because you don't itemize them?
10    A  Correct.
11    Q  But, and you also testified you stopped
12  selling Lokai bracelets after you were served in this
13  lawsuit.
14    A  Correct.
15    Q  Which was in May.
16    A  Correct.
17    Q  But then you testified that you've only had a
18  PayPal account for the last 30 days.
19    A  Correct.
20    Q  So --
21    A  Because you asked me what form of payment I've
22  taken.
23    Q  Okay. There is no question pending, sir.
24    So are you still selling Lokai bracelets?
25    A  I am not. I testified I haven't sold them

## Page 71

1  since you served me the papers.
2    Q  So what I'm confused about then it wouldn't be
3  a problem with your PayPal receipts not saying, not
4  being itemized. Are you sure of that last 30 days date?
5    A  I would have to go to my records.
6    Q  So you are not sure.
7    A  I cannot guess. I would have to go to my
8  records.
9    Q  So you could have had a PayPal account prior
10  to May of 2016?
11    A  Possibly.
12    Q  Okay. Sir, this is why you need to answer
13  questions fully and truthfully because now you are
14  giving contradictory answers.
15    A  I don't know.
16    Q  Under oath.
17    A  I cannot guess.
18    Q  So where did the 30 days come from?
19    A  I remember getting an e-mail from PayPal,
20  trying to start a new PayPal account.
21    Q  Start a new PayPal account?
22    A  Start a PayPal account.
23    Q  So you had a previous PayPal account.
24    A  I have a PayPal account.
25    Q  Did you have a PayPal account prior to May

## Page 72

1  2016?
2    A  I don't remember.
3    Q  Which is very different than the answer you
4  gave earlier when you said --
5    A  I'm confused. I don't remember.
6    Q  Okay. Did you ever have a PayPal account
7  previous to the one you currently have?
8    A  No.
9    Q  When did you -- do you remember the date you
10  started your current PayPal account?
11    A  I do not.
12    Q  Let's look at H-12. This is a shipping label
13  that you shipped something to the Reno-Sparks Convention
14  Center?
15    A  Correct.
16    Q  That would have most likely been product for
17  the show you were exhibiting at?
18    A  Correct.
19    Q  Does that refresh your memory earlier where
20  you said you were unsure how it arrived?
21    A  Yes.
22    Q  So you shipped it.
23    A  Correct.
24    Q  You didn't carry it on the plane.
25    A  I could have carried it also. I don't

## Page 73

1  remember.
2    Q  It says it was shipped to the Reno-Sparks
3  Convention Center?
4    A  Correct.
5    Q  And who is it being shipped from?
6    A  My Gear International.
7    Q  Okay. What do you receive from My Gear
8  International?
9    A  Electronics.
10    Q  What kind of electronics?
11    A  Headphones, speakers, earbuds.
12    Q  What did I do with twelve? Have this marked
13  as H-13. Hand you what's been marked as H-13. It's a
14  picture of you; isn't that correct, sir?
15    A  Yes.
16    Q  What are you holding?
17    A  I can't tell.
18    Q  What products were you displaying at the Reno
19  show?
20    A  This booth isn't put up yet.
21    Q  Not asking what's in the picture. I am asking
22  you what you were selling at the Reno show or what did
23  you intend to sell at the Reno show?
24    A  The product I typically sell; electronics,
25  household gadgets, gift items.

19 (Pages 70 to 73)

056

BAY AREA COURT REPORTING, INC.                www.bar-tampa.com

Page 74

1    Q   Okay.  Can you be a little more specific than
2    that?
3    A   I don't know what your question is, broad
4    question.
5    Q   No, your answer is broad.  What I'm asking is
6    to be a little more specific what items did you have
7    with you to sell at the Reno show.
8    A   My household regular products that I sell.  My
9    gift products.
10   Q   Which are?
11   A   A vast array of products that I sell,
12   differently to every show.
13   Q   Give me an example.
14   A   Headphones, pillows, sheets.
15   Q   Anything else?
16   A   Cords.
17   Q   Charging cables?
18   A   Charging cables.
19   Q   Bracelets with Lokai tags on them?
20   A   Answer the question again.  State the question
21   again.
22   Q   Did you have bracelets with Lokai tags on them
23   in Reno?
24   A   Yes.
25   Q   In the colors clear?

Page 75

1    A   I don't remember.
2    Q   Blue?
3    A   I do not remember.
4    Q   Pink?
5    A   Asked and answered.
6    Q   I didn't ask you about pink.
7    A   I don't remember.
8    Q   Red?
9    A   I don't remember.
10   Q   You don't remember?
11   A   I don't remember.
12   Q   Does that picture refresh your memory at all?
13   A   Does not.
14   Q   How about Exhibit H-9?  Does that refresh your
15   memory at all?  H-9, sir.  You need to look at it to
16   actually tell if it refreshes your memory.
17   A   What's the question?
18   Q   Does that refresh your memory what colors you
19   had in Reno?
20   A   No, it does not.
21   Q   I'm going to hand the court reporter and you,
22   so you have your copy as well.  You can have copies of
23   all the exhibits when we're done.
24       We are going to show Mr. Hueffner a series of
25   videos.  We're going to give a thumb drive to the court

Page 76

1    reporter so she can have them with the record.
2        THE REPORTER:  It's not an exhibit?
3        MR. DAVIS:  There are individual exhibits on
4    there.
5        (Discussion held off the record)
6        MR. DAVIS:  I am going to show you Exhibit
7    Hueffner Video 1.
8        (Video shown)
9    BY MR. DAVIS:
10   Q   Is that you in the video?
11   A   Yes.
12   Q   Okay.  Next to you are a series of clear
13   Tupperware like containers; is that correct?
14   A   Yes.
15   Q   What are in those containers?
16   A   Miscellaneous product that I sell.
17   Q   Miscellaneous product?
18   A   Yes.
19   Q   What are the labels?
20   A   I can't read them.
21   Q   That doesn't say S, that doesn't say M?
22   A   Yes.
23   Q   It does?
24   A   Yes.
25   Q   As in small, medium?

Page 77

1    A   Correct.
2    Q   And but you don't know what product's in
3    there?
4    A   All my containers have different product
5    inside there.
6    Q   Okay.  Those aren't Lokai bracelets.  Or what
7    you allege are Lokai bracelets.
8    A   Some of those are, yeah.
9    Q   Some are.  There's other things in there?
10   A   Yes.
11   Q   And how do you know that?
12   A   Because I fill up that thing with stuff that
13   could break because silicon stops it from moving around.
14   Q   That's all I have on that video.
15       I am going to show you exhibit video --
16   Hueffner Video 2.
17       (Video shown)
18   Q   What you have just taken out of the box, those
19   are the charging capabilities?
20   A   Yeah.
21   Q   All right.  So let's go back to Exhibit H-5.
22   Exhibit H-5, sir.  Sir.
23       So on the right-hand side of this picture
24   those are the same type of charging cables that you just
25   pulled out of the box in that video?

20  (Pages 74 to 77)

057

BAY AREA COURT REPORTING, INC.                    www.bar-tampa.com

| Page 78 | Page 80 |
|---|---|

**Page 78**

1    A   This is not in discovery so this can't be
2  used.
3    Q   Sir, answer the question.  Are those the --
4    A   This is not in discovery.  This cannot be
5  used.
6        MR. BIRNBAUM:  Shannon, do you think the judge
7  is in yet?
8        MR. DAVIS:  No, we still got, like, 45
9  minutes; right?
10       MS. PIERCE:  I can check, but I think we have
11  a little bit though.
12       MR. DAVIS:  Okay.
13  BY MR. DAVIS:
14    Q   All right.  We'll be talking about H-5 this
15  afternoon.  Let me just see maybe --
16    A   I prefer not to go to lunch because they've
17  already taken two half-hour breaks for cigarettes and
18  I've been sitting here waiting to this to get over with
19  so I prefer not to go to lunch.
20    Q   Sir, I have you here for seven hours.
21    A   Correct.
22    Q   Okay.
23    A   I prefer you don't take a break to go for
24  cigarettes every half-hour.
25    Q   Sir, the reason why I take a break is

**Page 79**

1  unimportant.  We're taking a break for the court
2  reporter, for the videographer to change tapes and,
3  fine, we won't take lunch now, we'll wait.  But we'll
4  take time to switch the tapes out.
5        THE VIDEOGRAPHER:  Time is 12:20 p.m.  We're
6  now off the record.
7        (Recess taken)
8        THE VIDEOGRAPHER:  The time is 12:26 p.m.
9  We're now back on the record.
10  BY MR. DAVIS:
11    Q   I'm going to show you the video that's marked as
12  Hueffner Video 3.  Again, that's you in the video, sir?
13    A   Correct.
14    Q   And behind the displays that you are
15  assembling in the video is the banner that says Lokai on
16  it?
17    A   Correct.
18    Q   That's your banner?
19    A   Yes.
20    Q   I am going to show you what's been marked as
21  Hueffner Video 4.  In front of you in that video, those
22  are the ten-foot charging cables you sell?
23    A   Some of them are.
24    Q   And, again, you are refusing to answer whether
25  or not those are the cables that are displayed on the

**Page 80**

1  right-hand side of the picture that's Exhibit H-5.
2    A   Correct.
3    Q   And I am going to show you what's been marked
4  Hueffner Video 5.  And what we're seeing in this video
5  is you setting up the Lokai banner; correct?
6    A   Correct.
7    Q   And it's about four feet wide, maybe less?
8    A   Way less.
9    Q   Okay.  And it's a single banner that's less
10  than four feet wide.
11    A   Correct.  We haven't talked about this on the
12  phone.  Is this what -- did you watch those?
13    Q   I'm sorry?
14    A   Did you watch all these?
15    Q   Sir, you don't get to ask questions.
16        Who is Angela Troop?
17    A   Another vendor.
18    Q   Who is Floyd Simmons?
19    A   No idea.
20    Q   You don't know an individual named -- the name
21  of Floyd Simmons?
22    A   I do not.
23    Q   Did you ever use the name Floyd Simmons?
24    A   I do not.
25    Q   Why is his Social Security Number attached to

**Page 81**

1  yours?
2    A   I have no idea.
3    Q   Do you have any bank accounts, sir?
4    A   No.
5    Q   None?
6    A   Zero.
7    Q   Did you ever have a bank account?
8    A   Yes.
9    Q   When was the last time you had a bank account?
10    A   2009.
11    Q   And you haven't done any banking since then?
12    A   No.  If someone has my name with my Social
13  Security Number on there I would like to see that
14  because someone is using my identity.
15    Q   This isn't an exhibit.
16    A   Well, if you are telling me on this deposition
17  that someone is using my name with my Social Security
18  Number, it's an issue.
19    Q   Do you have a driver's license, sir?
20    A   Yes.
21    Q   What state?
22    A   Wisconsin.
23    Q   What's the address on there?
24    A   725 Sydney Drive.
25    Q   Do you own any property, sir?

21  (Pages 78 to 81)

BAY AREA COURT REPORTING, INC.                    www.bar-tampa.com

---

**Page 94**

1      A  All this stuff is pre-bankruptcy, so I'm not
2   sure what this has to do with this lawsuit.
3      Q  I'm asking you, sir.
4      A  I'm asking you what this has to do with this
5   lawsuit.
6      Q  You can ask me all you want.  I am not in
7   deposition here, you are.
8      A  Well, I'm not going to answer anymore of these
9   questions due to the fact it has nothing to do with the
10  lawsuit.
11     Q  It absolutely has something to do with this
12  lawsuit, sir.  You made representations to this Court
13  that you have no money, that you're judgment proof.  I'm
14  just trying to figure out whether that's true.
15     A  Okay.  Well, keep going because the list goes
16  on and on.
17     Q  I know it does.
18        So Standard Express, LLC.
19     A  Didn't pay a shipping bill.
20     Q  Ramparts, Inc.?
21     A  Didn't pay a casino marker.
22     Q  For $104,000.
23     A  No, that's interest and -- interest and
24  penalties.
25     Q  That was the judgment?

---

**Page 95**

1      A  Correct.
2      Q  Cheryl, and I am going to spell the last name,
3   R-a-s-z-e-j-a.
4      A  Same thing, a rebate.  Didn't get their rebate
5   money, sued my company.
6      Q  How about the town of Brookfield?  What did
7   they sue you over?
8      A  Town of Brookfield.  Maybe speeding ticket.
9      Q  They would sue you over a civil filing of a
10  speeding ticket?
11     A  I don't remember.
12     Q  How about the town of Summit?
13     A  Probably real estate taxes.
14     Q  How about Ray Hintz, Inc.?
15     A  Didn't pay, didn't pay a trucking bill.
16     Q  Helo Saunas, Inc.?
17     A  Didn't pay for saunas.
18        Do you have the IRS in there for 1.8 million
19  in the state of Wisconsin for --
20     Q  You are very proud, Mr. Hueffner.
21     A  I am.
22     Q  I notice that.  Is that why you don't live
23  anywhere?
24     A  Correct.
25     Q  Because the IRS might know where you were?

---

**Page 96**

1      A  Not know where I am, but I have an address.
2      Q  The address you provided to the Court?
3      A  Correct.
4      Q  Is that where we send information there and
5   you claim you don't see it, same address?
6      A  No.  I see the information you send to the 725
7   Sydney address.
8      Q  Didn't you just tell the Court a few weeks ago
9   that you didn't receive anything --
10     A  No, I did not.
11     A  -- when we sent it to that address?
12     A  No, I didn't.
13     Q  All right.  So let me just recap.
14        You have no bank accounts?
15     A  Correct.
16     Q  You have no credit cards?
17     A  Correct.
18     Q  You have a PayPal account, but you don't have
19  a PayPal account?
20     A  Correct.
21     Q  You have no real property?
22     A  Correct.
23     Q  And this boat that you said you lived on you
24  rented for a week.
25     A  Correct.

---

**Page 97**

1      Q  Why are you in Tampa?
2      A  I was here for a trade show.
3      Q  When was that show?
4      A  It's over with.
5      Q  What did you sell?
6      A  Miscellaneous product.
7      Q  That's not going to cut it.  What did you
8   sell?
9      A  Pillows and sheets.
10     Q  And that's it?
11     A  Yes.
12     Q  No charger cables?
13     A  No.
14        What was the name of the trade show?
15     A  Tampa Junior League.
16     Q  And all you sold were pillows and sheets?
17     A  Correct.
18     Q  Nothing else?
19     A  Correct.  I told you I haven't sold Lokai
20  since the day I got served.
21     Q  Do you have any business associates?
22     A  No.
23     Q  No one that you work with, just people that
24  you said you find off eBay --
25     A  Correct.

---

25  (Pages 94 to 97)

BAY AREA COURT REPORTING, INC.                    www.bar-tampa.com

Page 98

```
1    Q    -- or Craig's List?
2         How do you pay them?
3    A    Cash.
4    Q    And how do you -- how do you -- do you issue
5    them a 1099 as an independent contractor --
6    A    Do not have to if it's under 600.
7    Q    How do you, well, I may know the answer to
8    this.  How do you file taxes for the business you do
9    with these trade shows if you don't keep records?
10   A    I haven't filed taxes.
11   Q    Since?
12   A    2009.  2007, actually.
13   Q    You haven't filed federal income taxes since
14   2007.
15   A    Correct.
16   Q    When is this tax lien from with the IRS?
17   A    2006.
18   Q    All right.  So you have a tax lien in the
19   amount of $1.5 million from back taxes dating to 2006.
20   And you have not filed a tax return since?
21   A    Correct.
22   Q    You testified that you've taken Uber to get
23   here; is that correct?
24   A    Yes.
25   Q    How did you register for Uber without a credit
```

Page 99

```
1    card?
2    A    I have a prepaid debit card from Walmart.
3    Q    So essentially you keep no business records.
4    A    Correct.
5    Q    So there is no way for us to know how many
6    Lokai bracelets you sold.
7    A    Correct.  I'm a gypsy and a vagabond.
8         All right.  Let's go off the record.
9         THE VIDEOGRAPHER:  The time is 12:27 p.m.
10   We're now off the record.
11        (Recess taken)
12        MS. PIERCE:  Are we on the record and ready?
13        THE VIDEOGRAPHER:  Not yet.  One moment,
14   please.
15        Time is 1:06 p.m.  We are now back on the
16   record.
17        MS. PIERCE:  All right.  On the record.  This
18   is Shannon Pierce.  I'm going to place you guys on
19   hold while I call the Judge's chambers.  She is
20   expecting our call.  I will be back with you
21   momentarily.
22        JUDGE COOKE:  Good morning, this is Judge
23   Cooke.
24        MS. PIERCE:  Good morning, Your Honor.  This
25   is Shannon Pierce on behalf of the Plaintiff Lokai.
```

Page 100

```
1    And I am attending the deposition telephonically
2    from my office in Reno.  I'm going to let the
3    counsel who are in the room in Tampa, Florida at
4    the deposition introduce themselves now.
5         JUDGE COOKE:  Thank you.  Go ahead, please.
6         MR. DAVIS:  Good afternoon from Tampa,
7    Your Honor.  Brent Davis and Shane Birnbaum from
8    Scarinci Hollenbeck for Plaintiffs.  And
9    Mr. Hueffner is here -- and Mr. Hueffner is here
10   without counsel.
11        JUDGE COOKE:  Okay.  What's happening,
12   counsel?
13        MR. DAVIS:  So, Your Honor, we're having an
14   issue that Mr. Hueffner is refusing to answer
15   questions about a photograph on the basis it wasn't
16   produced in discovery.  It is not necessary to
17   produce this in discovery because it's being used
18   solely for impeachment.  He answered the question
19   that he did not sell the counterfeit Lokais in a
20   trade show in Boston.  This is a photo of his booth
21   in Boston.
22        JUDGE COOKE:  Okay.  Mr. Hueffner?
23        THE WITNESS:  I'm not sure if that's a photo
24   of my booth in Boston.  And I did not deny selling
25   Lokai bracelets.  I denied selling counterfeit
```

Page 101

```
1    Lokai bracelets.
2         JUDGE COOKE:  Okay.  Just a minute, please.  I
3    have to get something.  Pardon me for having you
4    wait.  Okay.
5         Mr. Hueffner, we are going to talk about Rule
6    30 which is the rules about depositions.  And, so
7    that you are clear, although the Plaintiff's
8    counsel may have explained this to you, you can, if
9    you wish to interpose an objection to a question,
10   you may do so.  You may say what your objection is
11   and the basis for the objection.  However, that is
12   as far as it goes unless you are asking the
13   question is invading attorney-client privilege or
14   something like that.  In other words, you preserve
15   in the deposition your objection and explain what
16   it is, but the examination, the deposition, still
17   proceeds.
18        And so you can only refuse to answer to it for
19   privilege, a limitation, in other words, if I
20   ordered something earlier that said that subject
21   can't be covered.
22        So is that helpful to you, sir, understanding
23   that you can object to the question and state the
24   basis for the objection, as in a legal basis, but
25   you otherwise are required to answer.  And if you
```

26 (Pages 98 to 101)

060

BAY AREA COURT REPORTING, INC.                    www.bar-tampa.com

## Page 114

1  go to the casino much anymore. So a lot of this stuff
2  is from the past play that I did ten or 15 years ago
3  trying to get me to come back.
4       Q   Throughout the course of this deposition
5  you've answered that you don't remember on multiple
6  occasions. Is there anything that could show you that
7  would jar your memory to remember any of these things
8  that you no longer can recall?
9       A   It's a broad question.
10      Q   You have placed an objection on the record,
11  now answer the question.
12      A   I don't know.
13      Q   Let's take a look at Exhibit H-5. Please
14  (indicating). This is your booth?
15      A   Correct.
16      Q   Okay. And there are these, on the right-hand
17  side those are the charging cords that we referred to
18  earlier?
19      A   Correct.
20      Q   On the left-hand side there are two Lokai
21  banners; correct?
22      A   Correct.
23      Q   Earlier you testified that was one banner, but
24  that's not true, there's two of them; correct?
25      A   Correct.

## Page 115

1       Q   And in front of each of the banners is a
2  large, two large tubs; correct?
3       A   Correct.
4       Q   And they are filled with Lokai bracelets;
5  correct?
6       A   Uncorrect.
7       Q   What are they filled with?
8       A   Other product.
9       Q   Those aren't Lokai bracelets.
10      A   Those are Lokai bracelets, but there's filler
11  underneath.
12      Q   Are there more than 22?
13      A   Yes.
14      Q   So when you in April of 2016, when you were
15  contacted during that trade show or that show, whatever
16  kind of show it was, and you told Mr. Birnbaum that you
17  were not wasting your time and energy over 22 bracelets
18  that you have that was an incorrect statement.
19      A   No.
20      Q   Well, you just said there are more than 22
21  bracelets there.
22      A   I don't know what the time stamp on this
23  picture is. And when he called me the show had ended
24  and I had put stuff into the trailer, or truck and
25  trailer already.

## Page 116

1       Q   So you may have sold --
2       A   No, I had put stuff on a pallet to ship to the
3  next show.
4       Q   So you had more than 22 bracelets?
5       A   At that -- from this picture there's more than
6  22.
7       Q   Okay. At the end of the show did you have
8  more than 22?
9       A   I did not.
10      Q   So you sold that many?
11      A   No.
12      Q   What happened to them?
13      A   He asked me to -- I told you they went on the
14  pallet to get shipped to another location.
15      Q   Okay. So they weren't in your physical
16  possession, but you still going to the next location had
17  more than 22 bracelets?
18      A   Correct.
19      Q   So you did, when you represented to
20  Mr. Birnbaum in April you had more than 22 bracelets.
21      A   I object to the question because that isn't
22  what was stated through our e-mails that we talked
23  about.
24      Q   Let's look at Exhibit H-8. Can you read,
25  well, let's take a look. So the top e-mail on page one

## Page 117

1  of H-8, that e-mail is from you; correct?
2       A   Correct.
3       Q   To Mr. Birnbaum; correct?
4       A   Yes.
5       Q   On Tuesday, April 5th, 2016; correct?
6       A   Yes.
7       Q   That's when the Boston show that you had this
8  booth was at; correct?
9       A   At what time is that?
10      Q   4:54 p.m.
11      A   Thank you.
12      Q   So that was the date of the Boston show;
13  correct?
14      A   Correct.
15      Q   Okay. Please read the first sentence of your
16  e-mail.
17      A   I am not wasting my time and energy over the
18  22 bracelets that I have.
19      Q   Okay. So you represented that you only had 22
20  bracelets; is that true?
21      A   That is correct.
22      Q   But you're also saying that, no, you had more
23  than 22 bracelets.
24      A   Not at the show.
25      Q   So because they weren't physically next to

30  (Pages 114 to 117)

BAY AREA COURT REPORTING, INC.                    www.bar-tampa.com

---

Page 118

1    you? So why did you say you only had 22?
2       A   Because that's all that I had there.
3       Q   Because you had already shipped an unknown
4    number to the next show?
5       A   Correct.
6       Q   What was the next show?
7       A   I have no idea.
8       Q   Did you sell them at the next show?
9       A   I assume I did. Most likely.
10      Q   Because you were still selling them a month
11   later --
12      A   Correct.
13      Q   -- in Nevada?
14      A   Correct.
15      Q   Even though you were told they were
16   counterfeit.
17      A   I was not told they were counterfeit.
18      Q   At no point did Mr. Birnbaum -- we had a
19   telephone conversation before these e-mails ensued;
20   correct?
21      A   Yes.
22      Q   At no point Mr. Birnbaum didn't say that you
23   were selling counterfeits.
24      A   He made the assumption and then I sent him the
25   picture and he didn't say anything back which is right

---

Page 119

1    in the e-mail.
2       Q   Did you do any investigation into whether this
3    product you had was legitimate or not?
4       A   He was going to tell me what the problem was,
5    state it in the e-mail. Prove to me it's fake.
6       Q   Did you take any steps when you were told that
7    these were not legitimate Lokais, did you take any
8    action to confirm on your own whether they were or not.
9       A   How would I do that? I'm not -- I don't know
10   about that stuff, so no.
11      Q   Okay. And you still don't remember where you
12   got these Lokais posters from.
13      A   Correct.
14      Q   No recollection whatsoever.
15      A   Correct.
16      Q   Did you find them somewhere? Were they lying
17   on the floor?
18      A   No, they were at a show.
19      Q   What show?
20      A   I don't remember.
21      Q   Someone gave them to you?
22      A   Yes.
23      Q   Who?
24      A   I didn't get the banner. I got the banner. I
25   didn't get the banner stand. I got the banner. They

---

Page 120

1    were giving the banners away. I don't know who they
2    were. Buy 25, here, take this free banner.
3       Q   Now let's talk about these new documents you
4    sent us. Over the lunch break you e-mailed us two
5    e-mails; correct?
6       A   Yes.
7       Q   They contained six picture?
8       A   Yes.
9       Q   Four of them were pictures that you previously
10   produced; correct?
11      A   I guess. I don't remember.
12      Q   Turn to Exhibit H-1. This one (indicating).
13   Eight or nine pages in.
14      A   I've got it.
15      Q   Those four pictures were among the six that
16   you just sent us?
17      A   Correct.
18      Q   So you did produce those for us, these are
19   nothing new?
20      A   No.
21      Q   Like we discussed earlier, you don't know who
22   took these pictures, do you?
23      A   Yeah, I shot that picture.
24      Q   You did. Where?
25      A   In Aruba.

---

Page 121

1       Q   When were you in Aruba?
2       A   Last week.
3       Q   How did you get to Aruba?
4       A   Flew there.
5       Q   And how you did pay for your plane ticket?
6       A   Airline points.
7       Q   How do you generally pay for plane trip
8    tickets?
9       A   Through my credit card, through my debit card
10   or I normally --
11      Q   I'm sorry, which credit card would that be?
12      A   I have a debit card, which I already stated to
13   you, that I go to Walmart, I'll put cash on it. If I
14   need to book an airline ticket, I can book the airline
15   ticket with my debit card.
16      Q   Which is not what you just said. You said
17   with your credit card.
18      A   Debit card, credit card, check card. It's all
19   the same.
20      Q   Do you have a check card?
21      A   No.
22      Q   What do you do with cash that you make at
23   these shows?
24      A   Why is it relevant?
25      Q   So you've made your relevance objection, now

---

31  (Pages 118 to 121)

BAY AREA COURT REPORTING, INC.                    www.bar-tampa.com

| | Page 122 |
|---|---|
| 1 | answer the question. |
| 2 | A  Live my life. |
| 3 | Q  Do you carry it on you at all times? |
| 4 | A  Yes, it's not that much. |
| 5 | Q  Is Aruba in the United States? |
| 6 | A  No. |
| 7 | Q  Okay.  So that would be not relevant to |
| 8 | anything that goes on with U.S. trademark; is that |
| 9 | correct? |
| 10 | A  I don't know what the trademark laws are. |
| 11 | Q  Let's keep going to now let's look at some of |
| 12 | these other things.  Let's go to the first, I'm assuming |
| 13 | this is the screen shot.  It's marked Sprint 1:43 p.m. |
| 14 | I'm assuming this is a screen shot -- |
| 15 | A  Correct. |
| 16 | Q  -- from your phone? |
| 17 | A  Yes. |
| 18 | Q  So you did not take these pictures? |
| 19 | A  No. |
| 20 | Q  You have no idea who is selling them through |
| 21 | DHK.com? |
| 22 | A  I don't. |
| 23 | Q  How about the next one? |
| 24 | A  I do not. |
| 25 | Q  How about the next one? |

| | Page 124 |
|---|---|
| 1 | A  Those were off of the Peanut Festival website. |
| 2 | Q  And where is the Peanut Festival? |
| 3 | A  Dothan, Alabama. |
| 4 | Q  But you weren't at that festival? |
| 5 | A  No. |
| 6 | Q  Do you have any idea if that vendor is an |
| 7 | authorized Lokai dealer? |
| 8 | A  I have no idea.  That looks like it's a |
| 9 | carnival. |
| 10 | Q  There is no question pending, sir. |
| 11 | All right.  Let's go off the record. |
| 12 | THE VIDEOGRAPHER:  The time is 3:09 p.m.  We |
| 13 | are off the record. |
| 14 | (Recess taken) |
| 15 | THE VIDEOGRAPHER:  The time 3:11 p.m.  We are |
| 16 | now back on the record. |
| 17 | BY MR. DAVIS: |
| 18 | Q  Just a couple more questions, Mr. Hueffner. |
| 19 | So you testified earlier that you don't |
| 20 | remember where you acquired the Lokai bracelets; is that |
| 21 | correct? |
| 22 | A  Correct. |
| 23 | Q  And you still don't remember? |
| 24 | A  Correct. |
| 25 | Q  Okay.  And you don't remember how many of |

| | Page 123 |
|---|---|
| 1 | A  I do not. |
| 2 | Q  How about the next one from Google?  Do you |
| 3 | have any personal knowledge about any of these eBay |
| 4 | listings? |
| 5 | A  I do not. |
| 6 | Q  How about the next one? |
| 7 | A  I do not. |
| 8 | Q  How about the next one? |
| 9 | A  I do not. |
| 10 | Q  Continue with the next one. |
| 11 | A  I don't -- I don't have any knowledge of any |
| 12 | of these companies. |
| 13 | Q  Okay.  And is that true for the rest of the |
| 14 | documents you produced? |
| 15 | A  Yes. |
| 16 | Q  Okay.  And are we done?  Is that now with the |
| 17 | additional documents you sent us today, are those the -- |
| 18 | A  Yes. |
| 19 | Q  Okay.  So let's talk about these remaining two |
| 20 | pictures.  Did you take these pictures?  And we don't |
| 21 | have -- can't have a printout. |
| 22 | A  No, I did not. |
| 23 | Q  Okay.  Do you know who took the pictures? |
| 24 | A  I do not. |
| 25 | Q  Where did they come from? |

| | Page 125 |
|---|---|
| 1 | these Lokai tag bracelets you sold; is that correct? |
| 2 | A  Correct. |
| 3 | Q  And is that still correct? |
| 4 | A  Correct. |
| 5 | Q  And you don't remember how much money you |
| 6 | made? |
| 7 | A  Correct. |
| 8 | Q  Still don't remember? |
| 9 | A  I still don't remember. |
| 10 | Q  And you don't remember where you disposed of |
| 11 | the bracelets? |
| 12 | A  In the Reno dumpster. |
| 13 | Q  Is that a landmark or just a random dumpster |
| 14 | in Reno? |
| 15 | A  The Convention Center garbage. |
| 16 | Q  And that's where you disposed of the signs as |
| 17 | well? |
| 18 | A  Correct. |
| 19 | Q  But, and we've already established that was |
| 20 | after you were served with this lawsuit. |
| 21 | A  Correct. |
| 22 | Q  And but you don't remember, or you didn't -- |
| 23 | again, so you didn't give any thoughts to the fact that |
| 24 | those were relevant to the lawsuit as you got rid of |
| 25 | them. |

32  (Pages 122 to 125)

063

BAY AREA COURT REPORTING, INC.                    www.bar-tampa.com

## Page 126

1  A  I did not.
2  Q  I don't have anything further.
3      THE VIDEOGRAPHER:  The time is 3:13 p.m.  We
4  are now off the record.
5      THE REPORTER:  I'll send the original to?
6      MR. DAVIS:  That's a good question.  So you
7  have an option to --
8      MR. BIRNBAUM:  Should we have this on the
9  record?
10     MR. DAVIS:  Yeah.
11     (Discussion held off the record)
12     MR. DAVIS:  Sorry, on the record.
13     You have a choice to receive a copy of the
14 transcript, review it, make any corrections,
15 misspellings, things like that, sign and return it
16 to the court reporter, or you can waive the
17 signature and bypass that option.
18     If you want to receive the original, we need
19 an address where you will receive it.
20     And I believe, Shannon, what would be the time
21 frame in Nevada?
22     MS. PIERCE:  Thirty days.
23     MR. DAVIS:  Thirty days you would have to
24 return it in 30 days.
25     THE WITNESS:  That's fine.  I'll look it over.

## Page 127

1      MR. DAVIS:  Okay.  Which address should we
2  send it to?
3      THE WITNESS:  The same, 725 Sydney Drive,
4  Racine, Wisconsin 53402.
5      MR. DAVIS:  Anything else you can think of
6  housekeeping wise, Shannon?
7      MS. PIERCE:  No, I think we're good.
8      MR. DAVIS:  Okay.
9      THE REPORTER:  Shannon, did you need a copy of
10 this?
11     MS. PIERCE:  Yes, a condensed.
12     THE REPORTER:  Thank you.
13     MS. PIERCE:  Why don't we also put on the
14 record, just so there is no confusion,
15 Mr. Hueffner, that you have now answered the
16 questions about disclosures, that there is an
17 obligation under the federal rules that if at any
18 point your answers to those questions change,
19 that's something you need to notify us about.
20     Do you understand that?
21     THE WITNESS:  Yes.
22     MS. PIERCE:  That's all I have.  Thank you.
23     THE REPORTER:  Did you need a copy of the
24 exhibits attached to your condensed?
25     MS. PIERCE:  I don't need the exhibits.

## Page 128

1      THE WITNESS:  Ask you one question.
2      MR. DAVIS:  On the record or off?
3      THE WITNESS:  Off the record.
4      MR. DAVIS:  Let's wait until we're finished
5  with on the record.
6      THE WITNESS:  Okay.
7      (Discussion held off the record)
8      THE REPORTER:  Original exhibits to you?
9      MR. DAVIS:  Yes, that's fine.  I will hold on
10 to the original exhibits.  Actually, you want me to
11 just take them now?
12     THE REPORTER:  Sure.
13     MR. DAVIS:  I will take the exhibits with me.
14 So send the original to the witness and I
15 would like an e-tran.
16     THE REPORTER:  Okay.  Thank you.
17     (The deposition of CRAIG HUEFFNER
   concluded at 3:20 p.m.  Reading and
18 signing were not waived.)
19
20
21
22
23
24
25

## Page 129

1              CERTIFICATE OF OATH
2
3  STATE OF FLORIDA   }
4  COUNTY OF SARASOTA  }
5      I, the undersigned authority, certify that
6  CRAIG HUEFFNER personally appeared before me and was
7  duly sworn on Tuesday, November 15, 2016.
8      Witness my hand this 28th day of November,
9  2016.
10
11
12
13
14
15
   _____
   Deborah J. Slinn, RPR, CSR
16 Notary Public - State of Florida
   My Commission No. EE 193241
17 Expires:  April 26, 2020
18
19
20
21
22
23
24
25

33  (Pages 126 to 129)

064

129

```
 1                    CERTIFICATE OF OATH

 2

 3    STATE OF FLORIDA       }

 4    COUNTY OF SARASOTA     }

 5           I, the undersigned authority, certify that

 6    CRAIG HUEFFNER personally appeared before me and was

 7    duly sworn on Tuesday, November 15, 2016.

 8           Witness my hand this 28th day of November,

 9    2016.

10

11

12

13

14

15    Deborah J. Slinn, RPR, CSR

16    Notary Public - State of Florida
      My Commission No. EE 193241
17    Expires:  April 26, 2020

18

19

20

21

22

23

24

25
```

DEBORAH J. SLINN
Notary Public - State of Florida
Commission # FF 971271
My Comm. Expires Apr 26, 2020

24

130

```
 1                    DEPOSITION CERTIFICATE

 2

 3    STATE OF FLORIDA      }

 4    COUNTY OF CHARLOTTE }

 5            I, DEBORAH J. SLINN, Registered Professional

 6    Reporter, Certified Shorthand Reporter, and Notary

 7    Public in and for the State of Florida at Large, do

 8    hereby certify that I was authorized to and did

 9    stenographically report the foregoing deposition of

10    CRAIG HUEFFNER, and that the transcript numbering pages

11    01 through 131 is a true record of the testimony

12    given by the witness.

13            I FURTHER CERTIFY that I am neither an

14    attorney nor counsel for the parties to this cause, nor

15    a relative or employee of any attorney or party

16    connected with this litigation, and that I have no

17    financial interest in the outcome of this action.

18            IN WITNESS WHEREOF, I have hereunto subscribed

19    my name and affixed my seal this 28th day of November,

20    2016, at Rotonda West, Charlotte County, Florida.

21

22

23

24    _____
      Deborah J. Slinn, RPR, CSR, Notary Public
25    State of Florida at Large
```

DEBORAH J. SLINN
Notary Public - State of Florida
Commission # FF 971271
My Comm. Expires Apr 26, 2020

25

# EXHIBIT E:

# ABSOLUTE MARKETING DOCUMENTS



LOK000171

068

# APPLICATION FOR REGISTRATION OF FICTITIOUS NAME

REGISTRATION# G14000033410

**Fictitious Name to be Registered:**  ABSOLUTE MARKETING

**Mailing Address of Business:**   4942 INDIAN HILLS DRIVE
RACINE, WI  53406

**Florida County of Principal Place of Business:** MULTIPLE

**FEI Number:**

**Owner(s) of Fictitious Name:**

    HUEFFNER, CRAIG
4942 INDIAN HILLS DR
RACINE, WI  53406

**FILED
Apr 03, 2014
Secretary of State**

I the undersigned, being an owner in the above fictitious name, certify that the information indicated on this form is true and accurate. I further certify that the fictitious name to be registered has been advertised at least once in a newspaper as defined in Chapter 50, Florida Statutes, in the county where the principal place of business is located.  I understand that the electronic signature below shall have the same legal effect as if made under oath and I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s. 817.155, Florida Statutes.

CRAIG HUEFFNER _____ 04/03/2014 _____

    Electronic Signature(s)                              Date

**Certificate of Status Requested ( )**     **Certified Copy Requested ( )**

LOK000172

069

# EXHIBIT F:

# EXHIBITOR INFORMATION

5/24/2016



Search

Information     Calendar     Maps     Specials     Exhibitors

# Absolute Marketing

## Booth 467

**Address:**
4942 Indian Hills
Racine, WI 53406

**Phone:**
414-349-0518

© 2016 Boston Gift Show. All rights reserved.



LOK000173

071

4/4/2016



DALLAS MARKET CENTER   Absolute Advertising

# Contacts

www.absolutewhiteteethwhitening.com
craig_hueffner@msn.com
(414) 349-0518 - **Primary**
3214 W. Plaza Drive
Franklin, WI 53132

LOK000174

072



Search

Information    Calendar    Maps    Specials    Exhibitors    New Products

# Absolute Marketing

## Booth 2560

**Contact:**
Craig Hueffner

**Address:**
4942 Indian Hills Drive
Racine, WI 53402

**Phone:**
414-349-0518

© 2016 LAMKT. All rights reserved.



LOK000175

073



Search

Information     Calendar     Maps     Specials     Exhibitors     New Products

# Absolute Marketing

## Booth 3653

---

**Contact:**
Craig Hueffner

**Address:**
4942 Indian Hills Drive
Racine, WI 53406

**Phone:**
414-349-0518

© 2016 Las Vegas Souvenir & Resort Gift Show. All rights reserved.



LOK000176

074



10/5/2016



Search

Information     Calendar     Maps     Specials     Exhibitors     New Products

# Absolute Marketing

## Booth 3012

---

**Address:**
4942 Indian Hills Drive
Vendor
Racine, WI 53406

**Phone:**
419-349-0518

« Previous   |   Next »

© 2016 San Francisco Market. All rights reserved.



LOK000178

076

10/5/2016



Information     Calendar     Maps     Specials     Exhibitors     New Products

Search

# Absolute Marketing

## Booth 4145

**Contact:**
Craig Hueffner

**Address:**
4942 Indian Hills Drive
Racine, WI 53402

**Phone:**
414-349-0518

**Email:**
craig_hueffner@msn.com

« Previous   |   Next »

© 2016 Seattle Gift Show. All rights reserved.



LOK000179

077

10/5/2016                                    2016 Surf Expo - eBooth



  

# ABSOLUTE MARKETING

Racine,  WI
United States
http://www.tenfooter.com

 Booth: 1312

Back to the Search

For technical assistance please contact: Support@a2zinc.net



About Us | Contact Us | Advertising | Site Map | FAQ | Privacy Policy | Terms of Use

©2016 Emerald Expositions, LLC. All rights reserved.

8

LOK000180

078



Copyright 2016, a2z, Inc. All rights reserved.

LOK000181

079

# EXHIBIT G:
# DEFENDANT'S DISCOVERY RESPONSES

other further or different information is secured or available prior to the trial of the above

identified proceeding.

## INTERROGATORIES

### Interrogatory No. 1

Identify all products offered for sale and/or sold at any time by Defendant, or indirectly by any Third Parties at Defendant's request, or which are otherwise in the possession, custody and/or control of Defendant, which bear, embody or otherwise use the Lokai Bracelet Intellectual Property. *NON Availbly*

**Answer:**

### Interrogatory No. 2

Identify the total number of all products identified in Interrogatory No. 1 that were sold at any time by Defendant, or indirectly by any Third Parties at Defendant's request.

**Answer:** *50-60*

### Interrogatory No. 3

Identify the total number of all products identified in Interrogatory No. 1 that were distributed by Defendant, or indirectly by any Third Parties at Defendant's request.

**Answer:** *Same 2,2,2.*

- 7 -

**Interrogatory No. 7**

Identify the gross profit from all sales and/or distributions of all products identified in Interrogatory No. 1 generated by Defendant, or indirectly by any Third Parties at Defendant's request.

**Answer:**

NOT Availible

**Interrogatory No. 8**

Identify all Documents and other materials, products or pieces, including, but not limited to, posters, signs, billboards, advertisements, cards, brochures and other marketing materials, used by Defendant, or which are otherwise in the possession, custody and/or control of Defendant, which bear, embody or otherwise use the Class 35 Trademarks and/or the Lokai Website Images.

**Answer:**



**Interrogatory No. 9**

Identify all events and locations where Defendant, or any Third Parties at Defendant' request, at any time offered for sale and/or sold all products identified in Interrogatory N 1.

2

082

**Answer:**

Dont Remember

**Interrogatory No. 10**

Identify all events and locations where Defendant, or any Third Parties at Defendant's request, at any time displayed, posted or otherwise used any Documents, and other materials, products or pieces, including, but not limited to, posters, signs, billboards, advertisements, cards, brochures and other marketing materials, which bear, embody or otherwise use the Class 35 Trademarks and/or the Lokai Website Images.

**Answer:**

Dont remember

**Interrogatory No. 11**

Identify all Persons who manufactured any products identified in Interrogatory No. 1.

**Answer:**

Dont Know this Answer

**Interrogatory No. 12**

Identify all Persons who supplied any products identified in Interrogatory No. 1 to Defendant or any Third Parties at Defendant's request.

**Answer:**

Cash + Carry Shows (Not Sure

**Interrogatory No. 13**

Identify all Persons who manufactured any Documents and other materials identified in Interrogatory No. 8.

**Answer:**

Dont Know

**Interrogatory No. 14**

Identify all Persons who supplied any Documents and other materials identified in Interrogatory No. 8 to Defendant or any Third Parties at Defendant's request.

**Answer:**

Dont Know

**Interrogatory No. 15**

Identify all Persons who purchased any products identified in Interrogatory No. 1 from Defendant or any Third Parties at Defendant's request.

**Answer:**

Dont Know

**Interrogatory No. 19:**

For each of the foregoing interrogatories, identify each Person who supplied information

used in Defendant's response thereto and identify all files or categories of Documents

used in preparing each answer.

**Answer:**

_Craig Helfren_

DATED this ___ th day of October, 2016.

/s/ Shannon S. Pierce
Fennemore Craig, P.C.
Ann Morgan, NV Bar No. 933
Shannon S. Pierce, NV Bar No. 12471
300 E. Second Street, Suite 1510
Reno, NV 89501
Telephone:    (775) 788-2200
Facsimile:    (775) 786-5000
Email: amorgan@fclaw.com;
spierce@fclaw.com

*Counsel for Plaintiff Lokai Holdings LLC.*

(d)   the date on which the Document was created; and

(e)   such other information sufficient to identify the Document or thing for purposes of a subpoena *duces tecum*, including but not limited to, its author, addressee, recipients and, where not apparent from the identification alone, the relationship of such persons to each other.

7.    Where a Document may be sensed or copied by a computing device, such as a computer, text processor, word processor or any similar device, machine-readable copy shall be produced, in a form which may be read and used by a similar computing device. Defendant shall produce the contents of floppy disks, hard disks, optical disks, magnetic tapes, read-only memories, computer networks, and other memory devices of all types.

## REQUESTS FOR PRODUCTION

### REQUEST NO. 1:

A physical sample of all products that were at any time offered for sale and/or sold by Defendant, or indirectly by any Third Parties at Defendant's request, or which are otherwise in the possession, custody and/or control of Defendant, which bear, embody or otherwise use the Lokai Bracelet Intellectual Property.

non Availible

### REQUEST NO. 2:

A physical sample of all Documents and other materials, products or pieces, including, but not limited to, posters, signs, billboards, advertisements, cards, brochures and other marketing materials, that were at any time used by Defendant, or which are otherwise in the possession, custody and/or control of Defendant, which bear, embody or otherwise use the Class 35 Trademarks and/or the Lokai Website Images.

Non Availible

11/10/16

Guy

FENNEMORE CRAIG
PROFESSIONAL CORPORATION
PHOENIX

- 7 -

**REQUEST NO. 3:**

All Documents and things Relating To Defendant's, or any Third Parties' at Defendant's

request, purchase of any and all products identified in Request No. 1.

*Non Availble*

**REQUEST NO. 4:**

All Documents and things Relating To Defendant's, or any Third Parties' at Defendant's

request, sale of any and all products identified in Request No. 1.

*Non Availble*

**REQUEST NO. 5:**

All Documents and things Relating To Defendant's, or any Third Parties' at Defendant's

request, distribution of any and all products identified in Request No. 1.

*Non Availble*

**REQUEST NO. 6:**

All Documents and things Relating To Defendant's, or any Third Parties' manufacture of

any and all products identified in Request No. 1.

*Non Availble*

**REQUEST NO. 7:**

All Documents and things Relating To Defendant's, or any Third Parties' at Defendant's

request, purchase of any and all things identified in Request No. 2.

*Non Availble*

**REQUEST NO. 8:**

All Documents and things Relating To Defendant's or any Third Parties' manufacture of

any and all things identified in Request No. 2.

*Non Availble*

FENNEMORE CRAIG
PROFESSIONAL CORPORATION
PHOENIX

- 8 -

**REQUEST NO. 9:**

All Documents and things Relating To any Third Parties' supplying of any and all products identified in Request No. 1 to Defendant's or any Third Parties at Defendant's request.

*Non Avaible*

**REQUEST NO. 10:**

All Documents and things Relating To any Third Parties' supplying of any and all things identified in Request No. 2 to Defendant's or any Third Parties at Defendant's request.

*Non Availible*

**REQUEST NO. 11:**

All Documents and things Relating To any Persons who purchased the products identified in Request No. 21 from Defendant or any Third Parties at Defendant's request.

*NON Availible*

**REQUEST NO. 12:**

All Documents and things Relating To Defendant's, or any Third Parties' at Defendant's request, revenue generated by the sale of any and all products identified in Request No. 1.

*Non Availible*

**REQUEST NO. 13:**

All Documents and things that Defendant intends to use at the trial in this matter and/or that are otherwise Relating to the claims that Plaintiff has asserted against Defendant in this action.

*Any and all EBAY or Amazon or Alibaba pricing from Websites*

DATED this 14th day of October, 2016.

- 9 -

# EXHIBIT H:

# CEASE AND DESIST CORRESPONDENCE

# BIENSTOCK & MICHAEL, LLC
### - COUNSELORS AT LAW -

RONALD S. BIENSTOCK*²
JILL A. MICHAEL*
BRENT M. DAVIS*²
-------
IMRAAN FARUKHI*
IRA M. HOFFMAN*
ADRIAN LEE*²
ARRIELLE S. MILLSTEIN*²
-------
OF COUNSEL:
TODD B. RUBENSTEIN*
-------
*ADMITTED IN NY
²ADMITTED IN NJ
*ADMITTED IN WA
*ADMITTED IN CA

CONTINENTAL PLAZA
411 HACKENSACK AVENUE, 7ᵗʰ FLOOR
HACKENSACK, NEW JERSEY 07601-6329
TELEPHONE: (201) 525-0300
FACSIMILE: (201) 525-0133

WWW.MUSICESQ.COM

NEW YORK OFFICE:
1140 AVENUE OF THE AMERICAS, 9ᵀᴴ FLOOR
NEW YORK, NEW YORK 10036

TELEPHONE: (212) 247-0848
FACSIMILE: (212) 247-0910

REPLY TO NEW JERSEY OFFICE

WRITER'S DIRECT EMAIL:
RBIENSTOCK@MUSICESQ.COM

August 11, 2015

**VIA FIRST CLASS MAIL**
**& EMAIL (craig_hueffner@msn.com; ellen@absolute-advertising.com;**
**craig@absolute-advertising.com; mark.hannen@markhannendesigns.com)**

Craig & Ellen Hueffner
Absolute Advertising
3214 W Plaza Drive
Franklin, WI 53132

> **Re:   Lokai Holdings, LLC / Absolute Advertising / Infringement of Intellectual**
> **Property / Cease & Desist**
> **[Our File No. 3702-006]**

Dear Gentlepersons:

Please be advised that we represent Lokai Holdings, LLC ("our Client") with respect to various intellectual property matters. As you may know, our Client manufactures and sells inspirational, boutique bracelets. This usage is supported by an extensive portfolio of registered trademarks, including, but not limited to: (1) the standard character "LOKAI" trademark (Reg. Nos. 4,429,129 and 4,637,357), (2) the stylized "LOKAI" trademark (Reg. No. 4,640,686), (3) the stylized Water Droplet logo (Reg. No. 4,636,915), and (4) the trade dress for the Lokai Bracelet (Reg. No. 4,472,655) (collectively "Lokai® Trademarks" or "Registered Trademarks"). Printouts depicting our Client's trademark registrations are enclosed as Exhibit A for your reference.

It has recently come to our Client's attention that Absolute Advertising ("you" or "your") is presently marketing, distributing, offering for sale and/or selling counterfeit Lokai® bracelets ("Infringing Goods").

Please be advised that you are not authorized to make use of the Lokai® Trademarks and the Infringing Goods are in violation of our Client's federal trademark rights.  Any distribution, marketing,

LOK000182

# BIENSTOCK & MICHAEL, LLC
### - COUNSELORS AT LAW -

Absolute Advertising
Page 2

offering for sale and/or sale of the Infringing Goods will likely cause consumer confusion as to the true origin and/or sponsorship of the Infringing Goods, and trades on the goodwill of our Client.  See 15 U.S.C. §1114(1). Accordingly, your conduct gives rise to a number of causes of legal action, including, without limitation, trademark infringement, unlawful false designation of origin, and unfair competition in violation of our Client's intellectual property rights. See 15 U.S.C.§1125(a).

In light of our Client's trademark rights in the Lokai® Trademarks, we demand that you **immediately cease and desist** from any present and future distribution, marketing, promotion, offering for sale, and/or sale of any and all products discussed above that would infringe on our Client's intellectual property rights. Moreover, we require that you **immediately** comply with the following demands:

(1) Remove all postings of and references to the Infringing Goods on your website and/or any and all third party websites; and

(2) Immediately provide us with (i) an accounting of all sales of Infringing Goods; (ii) send us any and all Infringing Goods in your possession; and (iii) contact information of supplier(s) of the Infringing Goods, including the supplier's name, address, telephone numbers and email addresses.

Your full compliance with the above demands and your good faith cooperation in preventing any further distribution of the Infringing Goods will help ensure that our Client does not pursue legal action against your company. We demand that you respond in writing to confirm such action has been taken **within seven (7) days** of the receipt of this letter, indicating your full compliance with our demands.  If we do not receive such a satisfactory response from you or your representative by this deadline, our Client will be forced to take legal action to protect its rights, interests and claims with respect to this matter.

This correspondence does not constitute an admission or waiver of any rights. In addition, this letter is not an exhaustive recitation of the facts, law or circumstances. Therefore, our Client retains and reserves all defenses, claims, arguments and causes of action.

Very truly yours,

Ronald S. Bienstock

RSB/sb
Encl.
cc:     Lokai Holdings, LLC (*via email only*)

2

LOK000183

091

# EXHIBIT A

LOK000184

# United States of America
## United States Patent and Trademark Office

# LOKAI

**Reg. No. 4,637,357**

**Registered Nov. 11, 2014**

**Int. Cl.: 35**

**SERVICE MARK**

**PRINCIPAL REGISTER**

LOKAI HOLDINGS LLC (DELAWARE LIMITED LIABILITY COMPANY)
12TH FLOOR
170 VARICK STREET
NEW YORK, NY 10013

FOR: RETAIL STORE SERVICES FEATURING JEWELRY, IN CLASS 35 (U.S. CLS. 100, 101 AND 102)

FIRST USE 6-4-2013; IN COMMERCE 6-4-2013.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NO. 4,429,129.

SER. NO. 86-298,717, FILED 6-3-2014.

JUSTIN SEVERSON, EXAMINING ATTORNEY



*Michelle K. Lee*

**Deputy Director of the United States
Patent and Trademark Office**

4

LOK000185

093

# United States of America

## United States Patent and Trademark Office

# LoKai

**Reg. No. 4,429,129**      LOKAI HOLDINGS LLC (DELAWARE LIMITED LIABILITY COMPANY)
**Registered Nov. 5, 2013**      27 WEST 24TH ST
                                                 NEW YORK, NY 10010

**Int. Cl.: 14**      FOR: BRACELETS, JEWELRY, RUBBER OR SILICON WRISTBANDS IN THE NATURE OF
                             A BRACELET, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50)

**TRADEMARK**      FIRST USE 6-4-2013; IN COMMERCE 6-4-2013.

**PRINCIPAL REGISTER**      THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
                                          TICULAR FONT, STYLE, SIZE, OR COLOR.

                                          SN 85-170,908, FILED 11-6-2010

                                          JAY FLOWERS, EXAMINING ATTORNEY



Deputy Director of the United States Patent and Trademark Office

LOK000186

094

# United States of America
## United States Patent and Trademark Office



**Reg. No. 4,472,655**

**Registered Jan. 21, 2014**

**Corrected Sep. 23, 2014**

**Int. Cl.: 14**

**TRADEMARK**

**SUPPLEMENTAL REGISTER**

LOKAI HOLDINGS, LLC (DELAWARE LIMITED LIABILITY COMPANY)
170 VARICK STREET
12TH FLOOR
NEW YORK, NY 10013

FOR: JEWELRY, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

FIRST USE 12-24-2010; IN COMMERCE 12-24-2010.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE BANKERS, APART FROM THE MARK AS SHOWN.

THE COLOR(S) BLACK AND WHITE IS/ARE CLAIMED AS A FEATURE OF THE MARK.

THE MARK CONSISTS OF THE COLORS BLACK AND WHITE AS APPLIED TO DIAMETRICALLY OPPOSED BEADS OR SPHERES CONTAINED IN THE GOODS. THE DOTTED LINES SHOW PLACEMENT OF THE MARK ON THE GOODS AND THE NUMBER AND SIZE OF THE DOTTED BEADS OR SPHERES DISPLAYED ARE NOT CLAIMED AS PART OF THE MARK.

SER. NO. 85-467,829, FILED P.R. 11-9-2011; AM. S.R. 10-31-2013.



*Michelle K. Lee*

Deputy Director of the United States
Patent and Trademark Office

6

LOK000187

095

# United States of America

## United States Patent and Trademark Office

# lokai

**Reg. No. 4,640,686**
**Registered Nov. 18, 2014**
**Int. Cl.: 14**

**TRADEMARK**

**PRINCIPAL REGISTER**

LOKAI HOLDINGS LLC (DELAWARE LIMITED LIABILITY COMPANY)
12TH FLOOR
170 VARICK STREET
NEW YORK, NY 10013

FOR: BRACELETS; JEWELRY, RUBBER OR SILICON WRISTBANDS IN THE NATURE OF A BRACELET, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50)

FIRST USE 6-0-2013, IN COMMERCE 6-0-2013.

OWNER OF U.S. REG. NO. 4,429,129.

THE MARK CONSISTS OF THE WORD "LOKAI" WITH AN OPEN DOT ABOVE THE LETTER "I" AND A SOLID DOT BELOW THE LETTER "I".

SER. NO. 86-244,019, FILED 4-7-2014.

JUSTIN SEVERSON, EXAMINING ATTORNEY



*Michelle K. Lee*
**Deputy Director of the United States**
**Patent and Trademark Office**

LOK000188

096

# United States of America
## United States Patent and Trademark Office



**Reg. No. 4,636,915**
**Registered Nov. 11, 2014**
**Int. Cl.: 14**

**TRADEMARK**

**PRINCIPAL REGISTER**

LOKAI HOLDINGS LLC (DELAWARE LIMITED LIABILITY COMPANY)
12TH FLOOR
170 VARICK STREET
NEW YORK, NY 10013

FOR: BRACELETS, JEWELRY; RUBBER OR SILICON WRISTBANDS IN THE NATURE OF
A BRACELET, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).

FIRST USE 1-0-2014; IN COMMERCE 1-0-2014.

THE MARK CONSISTS OF TWO CONCENTRIC STYLIZED WATER DROPLETS CONTAIN-
ING TWO CIRCLES.

SER. NO. 86-244,023, FILED 4-7-2014.

JUSTIN SEVERSON, EXAMINING ATTORNEY



*Michelle K. Lee*
**Deputy Director of the United States
Patent and Trademark Office**

LOK000189

097

## Shane I. Birnbaum

| | |
|---|---|
| **From:** | Shane Birnbaum |
| **Sent:** | Tuesday, August 11, 2015 2:05 PM |
| **To:** | 'craig_hueffner@msn.com'; 'ellen@absolute-advertising.com'; 'craig@absolute-advertising.com'; 'mark.hannen@markhannendesigns.com' |
| **Cc:** | Ronald Bienstock |
| **Subject:** | Lokai Holdings, LLC / Absolute Advertising / Infringement of Intellectual Property / Cease & Desist [Our File No. 3702-006] |
| **Attachments:** | Cease & Desist_Absolute Advertising_2015.08.11.pdf |

| **TrackingTracking:** | Recipient | Delivery |
|---|---|---|
| | 'craig_hueffner@msn.com' | |
| | 'ellen@absolute-advertising.com' | |
| | 'craig@absolute-advertising.com' | |
| | 'mark.hannen@markhannendesigns.com' | |
| | Ronald Bienstock | Delivered: 8/11/2015 2:05 PM |

Dear Gentlepersons:

On behalf of Ronald Bienstock, please see the attached correspondence regarding the above-referenced matter. A copy has been sent via first class mail.

Please direct any and all responses to Ronald Bienstock at rbienstock@musicesq.com.  Thank you.

Best regards,

Shane Birnbaum

Shane Birnbaum, Law Clerk
**Bienstock & Michael, LLC**
NJ Office:  Continental Plaza, 411 Hackensack Avenue, 7th Floor, Hackensack, NJ 07601
T:  (201) 525-0300 Ext. 209 | F:  (201) 525-0133
NY Office:  1140 Avenue of the Americas, 9th Floor, New York, NY 10036
T: (212) 247-0848 | F: (212) 247-0910
sbirnbaum@musicesq.com | http://www.musicesq.com

**Confidentiality Notice:  This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521 and is legally privileged.  This e-mail is the property of Bienstock & Michael, LLC and contains confidential and/or privileged information.  This e-mail is intended to be received and reviewed only by the individual(s) named above.  *Any review, use, dissemination, disclosure or copying of this e-mail or any attachments is strictly prohibited.*  If you have received this e-mail in error, please immediately notify the sender and delete all copies of the e-mail and any attachments.  Thank you for your cooperation and assistance.**

LOK000190

098

## Shane I. Birnbaum

| | |
|---|---|
| **From:** | Microsoft Outlook |
| **To:** | craig_hueffner@msn.com; ellen@absolute-advertising.com; craig@absolute-advertising.com; mark.hannen@markhannendesigns.com |
| **Sent:** | Tuesday, August 11, 2015 2:06 PM |
| **Subject:** | Relayed: Lokai Holdings, LLC / Absolute Advertising / Infringement of Intellectual Property / Cease & Desist [Our File No. 3702-006] |

**Delivery to these recipients or groups is complete, but no delivery notification was sent by the destination server:**

craig_hueffner@msn.com (craig_hueffner@msn.com)

ellen@absolute-advertising.com (ellen@absolute-advertising.com)

craig@absolute-advertising.com (craig@absolute-advertising.com)

mark.hannen@markhannendesigns.com (mark.hannen@markhannendesigns.com)

Subject: Lokai Holdings, LLC / Absolute Advertising / Infringement of Intellectual Property / Cease & Desist [Our File No. 3702-006]

LOK000191

099